UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CARMENCITA BRUNO,

                        Plaintiff,

                                                        1:12-CV-0285
v.                                                      (GTS/RFT)

CITY OF SCHENECTADY;
THOMAS MATTICE, City Police Officer;
JOHN DOES #1 THROUGH #3, City Police Officers;
JANE DOE #1, City Police Officer;
MICHAEL DELLAROCCO, City Fire Chief/Captain;
FAARSTAD, City Fire Chief;
COUNTY OF SCHENECTADY;
MARK LAVIOLETTE, County EMS Dept. Employee;
KYLE RUDOLPHSEN, County EMS Dept. Employee;
VILLAGE OF SCOTIA, and
JOHN DOES #6 THROUGH #10, Village Firemen,

                        Defendants.
_____

APPEARANCES:                            OF COUNSEL:

CARMENCITA BRUNO
  Plaintiff, *Pro Se*
Howes Cave, NY 12092

CARTER CONBOY, CASE, BLACKMORE,         MICHAEL J. MURPHY, ESQ.
MALONEY & LAIRD, P.C.
  Counsel for City Defendants
Albany, NY

PHILLIPS LYTLE LLP                      MARC H. GOLDBERG, ESQ.
  Counsel for County Defendants
Albany, NY

GOLDBERG SEGALLA                        JONATHAN M. BERNSTEIN, ESQ.
  Counsel for Village Defendants
Albany, NY

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

Currently before the Court, in this *pro se* civil rights action by Carmencita Bruno

("Plaintiff") against the above-captioned municipalities and municipal employees (collectively

"Defendants"), are the following four motions: (1) a motion to dismiss for failure to state a claim

filed by the City of Schenectady and seven of its employees (the "City Defendants"); (2) a

motion to dismiss for failure to state a claim and/or lack of subject-matter jurisdiction filed by

the Village of Scotia and five of its employees (the "Village Defendants"); (3) a motion to

dismiss for failure to state a claim and/or lack of subject-matter jurisdiction filed by the County

of Schenectady and two of its employees (the "County Defendants"); and (4) Plaintiff's cross-

motion for leave to file a Second Amended Complaint.  (Dkt. Nos. 23, 26, 36, 44.)  For the

reasons set forth below, the City Defendants' motion is granted in part and denied in part; the

Village Defendants' motion is granted; the County Defendants' motion is granted; and Plaintiff's

cross-motion is denied.

## I.      RELEVANT BACKGROUND

### A.      Claims Asserted in Plaintiff's Amended Complaint

Because this Decision and Order is intended primarily for the review of the parties, and

the parties have demonstrated (in their motion papers) an adequate understanding of the

procedural history of this action leading up to the filing of Plaintiff's Amended Complaint on

August 24, 2012, and the Court will not recite that procedural history at this time.

Generally, liberally construed, Plaintiff's Amended Complaint alleges that, on the

evening of November 17, 2010, Defendants callously refused to rescue her dogs from her home

during or after a fire in that home, refused to let Plaintiff rescue her dogs after the fire (causing their death), and mistreated her due to her repeated pleas for assistance. (Dkt. No. 8.)

Based on these allegations, the Amended Complaint asserts the following 13 causes of action: (1) a violation of her "general" constitutional rights pursuant to 42 U.S.C. § 1983 (asserted against all Defendants); (2) a violation of her right to counsel under the Sixth Amendment (asserted against the City Defendants); (3) a violation of her right of free speech under the First Amendment (asserted against the City Defendants); (4) municipal liability under 42 U.S.C. § 1983 through a failure to the implement appropriate policies or customs (asserted against all Defendants); (5) a violation of her right to be free from the use of excessive force under the Fourth Amendment (asserted against the City Defendants); (6) a violation of her right to be free from false arrest under the Fourth Amendment (asserted against the City Defendants); (7) a violation of her right to substantive and procedural due process under the Fourteenth Amendment (asserted against all Defendants); (8) a claim of false imprisonment in violation of the "New York Tort Liability Act" (asserted against the City Defendants); (9) negligence (asserted against the City Defendants); (10) negligent supervision (asserted against all Defendants); (11) trespass (asserted against the City Defendants and Village Defendants); (12) conversion (asserted against all Defendants); and (13) battery (asserted against the City Defendants). (*Id.*)

**B.**     **Parties' Briefing on City Defendants' Motion to Dismiss**

**1.**     **City Defendants' Memorandum of Law in Chief**

Generally, in their memorandum of law in chief, the City Defendants assert twelve arguments with regard to Plaintiff's claims against them. (Dkt. No. 23, Attach. 13 [City Defs.' Memo. of Law].)

First, argue the City Defendants, Plaintiff's Amended Complaint should be dismissed, as a threshold matter, for failing to comply with Fed. R. Civ. P. 8's requirement of a "short and plain statement," because it asserts 286 paragraphs of rambling and often irrelevant allegations that make it impossible to decipher the relief sought and the grounds for that relief. (*Id*. at 10-13 [attaching pages "2" through "5" of City Defs.' Memo. of Law].)

Second, argue the City Defendants, Plaintiff has failed to state a claim against the City of Schenectady under 42 U.S.C. § 1983, because (a) a municipality can be liable under Section 1983 only if the action alleged to be unconstitutional was the result of an official policy or custom, (b) generally an official policy cannot be inferred from a single incident of illegality, absent some additional circumstance, and (c) here, Plaintiff has failed to allege facts plausibly suggesting that the single incident alleged resulted from a municipal policy or custom. (*Id*. at 13-15 [attaching pages "5" through "7" of City Defs.' Memo. of Law].)

Third, argue the City Defendants, Plaintiff has failed to state a claim of infringement of her right to counsel under the Sixth Amendment arising from her detention in a police car, police station and the hospital without having been read her *Miranda* rights, because (a) she has failed to allege facts plausibly suggesting that a criminal proceeding had been commenced against her, and (b) in any event, the right to counsel during a custodial interrogation recognized in *Miranda* is merely a procedural safeguard (whether it arises under the Fifth or Sixth Amendment), the violation of which does not give rise to a civil rights claim under 42 U.S.C. § 1983. (*Id*. at 15-17 [attaching pages "7" through "9" of City Defs.' Memo. of Law].)

Fourth, argue the City Defendants, Plaintiff has failed to state a claim of infringement of her right to freedom of speech under the First Amendment, because she has failed to allege facts

plausibly suggesting that (a) Plaintiff's request that her dogs be rescued was speech protected under the First Amendment, (b) the City Defendants' actions (in arresting her and preventing the rescue of her dogs) were motivated, or substantially caused, by that speech, or (c) the City Defendants' actions effectively chilled future such speech. (*Id*. at 17-21 [attaching pages "9" through "13" of City Defs.' Memo. of Law].)

Fifth, argue the City Defendants, Plaintiff has failed to state a claim for conversion under New York State common law, because she has failed to allege facts plausibly suggesting that the City Defendants exercised unauthorized dominion over her dogs by failing to rescue them and/or preventing them from being rescued, as the other emergency personnel were attempting to extinguish the fire in her home. (*Id*. at 21-22 [attaching pages "13" and "14" of City Defs.' Memo. of Law].)

Sixth, argue the City Defendants, Plaintiff has failed to state a claim for trespass under New York State common law, because she has failed to allege facts plausibly suggesting that the City Defendants, who were present at her home to put out a fire there, lacked justification to be there. (*Id*. at 22-23 [attaching pages "14" and "15" of City Defs.' Memo. of Law].)

Seventh, argue the City Defendants, Plaintiff has failed to state a claim for negligence under New York State common law, because (a) there is no recognized duty in New York to save an individual's pet, and (b) in any event, a municipality bears no liability for the negligent performance by its agents of governmental functions absent the existence of a special relationship between the injured party and the municipality (the facts of which have not been alleged here). (*Id*. at 23-24 [attaching pages "15" and "16" of City Defs.' Memo. of Law].)

Eighth, argue the City Defendants, Plaintiff has failed to state a claim of infringement of her right to due process under the Fourteenth Amendment, because she has failed to allege facts plausibly suggesting that (a) the City Defendants' actions was so outrageously arbitrary as to be a gross abuse of governmental authority (for purposes of a substantive due process claim), or (b) the City Defendants had sufficient time to conduct a hearing before the dogs' death or even that they deprived Plaintiff of her property (for purposes of a procedural due process claim). (*Id*. at 24-26[attaching pages "16" through "18" of City Defs.' Memo. of Law].)

Ninth, argue the City Defendants, Plaintiff has failed to state a claim for excessive force under the Fourth Amendment, because she has failed to allege facts plausibly suggesting that Defendant Mattice used anything more than a de minimis amount of force against her, or that she sustained any specific or identifiable physical or mental harm. (*Id*. at 27-28 [attaching pages "19" and "20" of City Defs.' Memo. of Law].)

Tenth, argue the City Defendants, Plaintiff has failed to state a claim for false arrest under the Fourth Amendment, because (a) she has failed to allege facts plausibly suggesting that Defendant Mattice, or any other the City Defendants, intentionally confined her without justification (or that she sustained any cognizable damages as a result of the alleged false arrest), and (b) indeed she has alleged facts plausibly suggesting that Defendant Mattice had probable cause to arrest Plaintiff. (*Id*. at 28-30 [attaching pages "20" through "22" of City Defs.' Memo. of Law].)

Eleventh, argue the City Defendants, Plaintiff has failed to state a claim of infringement of rights under the New York State Constitution, because her state constitutional claims of battery, false imprisonment, and negligent supervision are duplicative of her federal

constitutional claims of excessive force and false arrest. (*Id*. at 30-31 [attaching pages "22" and "23" of City Defs.' Memo. of Law].)

Twelfth, argue the City Defendants, the Court should decline to exercise supplemental jurisdiction over Plaintiff's remaining common-law claims, which should be dismissed without prejudice. (*Id*. at 31-32 [attaching pages "23" and "24" of City Defs.' Memo. of Law].)

### 2. Plaintiff's Opposition Memorandum of Law

Generally, in her opposition memorandum of law, Plaintiff asserts twelve arguments. (Dkt. No. 39, Attach. 1 [Plf.'s Opp'n Memo. of Law].)

First, argues Plaintiff, she has stated a claim against the City Defendants, because her allegations were factual and particularized to the events described, thus allowing the Court to draw all reasonable inferences therefrom, and providing sufficient notice to the City Defendants of Plaintiff's claims. (*Id*. at 6-10.)

Second, argues Plaintiff, she has state a claim against the City of Schenectady under 42 U.S.C. § 1983, because (a) she has alleged facts plausibly suggesting that the injury resulted from a municipal policy or custom (through the municipality's failure to take disciplinary action against the offending police officers), and (b) her claim should be liberally construed as effectively amended by her papers in response to the City Defendants' motion (to the extent those papers are consistent with the allegations of her Amended Complaint). (*Id*. at 10-18.)

Third, argues Plaintiff, while it is true that a denial-of-counsel claim does not exist under the circumstances (under either the federal or state constitution), the Court should, as a policy matter, note the City Defendants' brazen and barbaric abuse of power, and their conduct in keeping her in secrecy in the hospital. (*Id*. at 18-20.)

Fourth, argues Plaintiff, while it is true that a denial-of-free-speech claim does not exist (because her speech was not chilled), the Court should note that the City Defendants' arrest of her was motivated by contempt and callousness, and not by the existence of probable cause or even reasonable suspicion.  (*Id*. at 20-21.)

Fifth, argues Plaintiff, while it is true that her Amended Complaint "did not recite factually all the elements of conversion," her Second Amended Complaint does so, because it alleges facts plausibly suggesting that the City Defendants "robustly excluded Plaintiff's absolute right to possession" of her dogs, after she demanded that the City Defendants rescue those dogs, and their exigent need to not attempt to do so had dissipated.  (*Id*. at 22-24.)

Sixth, argues Plaintiff, she has stated a claim for trespass under New York State common law, because she has alleged facts plausibly suggesting that the City Defendants (specifically, Defendants DellRocco, Mattice and John Doe #1, and Faarstad) "acted robustly to exclude Plaintiff's absolute right to possession" of her dogs (by failing to rescue them by "bring[ing] them out for air"), even after the fire had been extinguished.  (*Id*. at 24-27.)

Seventh, Plaintiff concedes that she has not stated a claim for negligence against the City Defendants under New York State common law.  (*Id*. at 27.)

Eighth, with regard to the City Defendants' arguments challenging her due process claim, Plaintiff asserts an argument "[a]s discussed supra with legal authority" (apparently referring to her arguments that she was denied due process of law through her denial of counsel and the prohibited "taking" of her dogs).  (*Id*. at 18, 24, 27.)

Ninth, argues Plaintiff, she has stated a claim for excessive force under the Fourth Amendment, because, in this case, "two young strong men" took "a petit woman" and "thr[e]w

her into the back of the car, where she [fell] on her side, bruising her left side: thing, arm and wrist." (*Id*. at 27.)

Tenth, argues Plaintiff, while it is true that her Amended Complaint does not state a claim for false arrest under the Fourth Amendment, she is "confident" that her Second Amended Complaint does so because, since the filing of her Amended Complaint, she has "refused to accept an offensive adjournment in contemplation of dismissal" in "the Schenectady criminal court." (*Id*. at 28.)

Eleventh, argues Plaintiff, she has stated a claim for cruel and unusual punishment under the Eighth Amendment, because of the City Defendants' deliberately or recklessly failing to provide her with adequate medical care, despite her serious medical needs. (*Id*. at 28-30.)

### 3.      City Defendants' Reply Memorandum of Law

Generally, in their reply memorandum of law, the City Defendants assert five arguments. (Dkt. No. 49, Attach. 6 [City Defs.' Reply Memo. of Law].)

First, argue the City Defendants, even when Plaintiff's Amended Complaint is afforded the extra-liberal constructions usually reserved for pro se pleadings and/or civil rights pleadings, the Amended Complaint fails to allege facts plausibly suggesting a viable claim. (*Id*. at 4-6 [attaching pages "1" through "3" of City Defs.' Reply Memo. of Law].)

Second, argue the City Defendants, Plaintiff's papers in opposition to the City Defendants' motion should not be considered as effectively amending the allegations of her Amended Complaint, because the allegations in Plaintiff's opposition papers are wholly inconsistent with the allegations in her Amended Complaint (including an unrelated allegation that she had previously filed a complaint against a city police officer, an unrelated allegation that

her whereabouts were concealed from her family and associates, and a late-blossoming personal-injury claim). (*Id*. at 6-7 [attaching pages "3" and "4" of City Defs.' Reply Memo. of Law].)

Third, argue the City Defendants, the voluminous extrinsic evidence that Plaintiff presents to the Court (i.e., a 56-page PowerPoint presentation on disaster animal response, the 137-page Volume 3 of *Qualitative Sociology Review*, a two-page brochure from Tufts University, 126-pages of internet news stories, and complaints from three other federal court actions involving Defendant Mattice and/or the City of Schenectady Police Department's alleged Use of Force policy) should not be considered by the Court as part of her Amended Complaint. (*Id*. at 7-8 [attaching pages "7" and "8" of City Defs.' Reply Memo. of Law].)

Fourth, argue the City Defendants, Plaintiff has effectively abandoned various claims by failing to specifically address the City Defendants' arguments challenging them (including her Sixth Amendment right-to-counsel claim, her First Amendment free-speech claim, her Fourteenth Amendment due process claims, her Fourth Amendment false arrest claim, her state constitutional claims, her state common-law conversion claim, her state common-law negligence claim, and any other supplemental state common-law claims). (*Id*. at 8-9 [attaching pages "5" and "6" of City Defs.' Reply Memo. of Law].)

Fifth, argue the City Defendants, even setting aside this effective abandonment, these claims, and Plaintiff's other claims, should be dismissed for the following reasons: (a) her municipal claim should be dismissed because she has failed to plead any exceptional circumstances allowing a single incident to be viewed as a municipal custom or policy, but merely references her previous dealings with City of Schenectady Police Officers; (b) her Sixth Amendment right-to-counsel claim should be dismissed because she has failed to plead facts

plausibly suggesting that adversary judicial proceedings were commenced against her; (c) her state common-law trespass claim should be dismissed based on the City Defendants' allegedly remaining on her property after the fire had been extinguished without rescuing her dogs, because the City Defendants were justified in temporarily remaining on her property, and there are no factual allegations plausibly suggesting that the dogs lived after the fire was extinguished (or that they would have lived longer, had they been brought out of the home); (d) her Fourth Amendment excessive force claims should be dismissed because even her late-blossoming, threadbare allegation of "bruising" is insufficient to state an actionable claim; and (e) her Eighth Amendment cruel-and-unusual punishment claim should be dismissed because it is not included in her Amended Complaint, nor is any allegation that the City Defendants failed, with a sufficient mental state, to provide her medical treatment.  (*Id*. at 9-16 [attaching pages "6" through "13" of City Defs.' Reply Memo. of Law].)

## C.     Parties' Briefing on Village Defendants' Motion to Dismiss

### 1.     Village Defendants' Memorandum of Law in Chief

Generally, in their memorandum of law in chief, the Village Defendants assert 12 arguments with regard to Plaintiff's claims against them.  (Dkt. No. 26, Attach. 8 [Village Defs.' Memo. of Law].)

First, argues the Village Defendants, Plaintiff lacks standing to assert her claims, because she has failed to allege facts plausibly suggesting that it was the Village Defendants, as opposed to the fire (or the other Defendants in this case), that caused the death of her dogs (or even that the Village Defendants arrested her and thus prevented her from rescuing her dogs).  (*Id*. at 15-16 [attaching pages "5" and "6" of Village Defs.' Memo. of Law].)

Second, argues the Village Defendants, Plaintiff's claims against the Defendant Village of Scotia Fire Department must be dismissed as redundant of her claims against the Defendant Village of Scotia. (*Id*. at 16-17 [attaching pages "6" and "7" of Village Defs.' Memo. of Law].)

Third, argues the Village Defendants, Plaintiff's claims against the Defendant Village of Scotia must be dismissed because (a) under 42 U.S.C. § 1983, a municipality can be liable only if the action alleged to be unconstitutional was the result of an official policy or custom, (b) generally an official policy cannot be inferred from a single incident of illegality, absent some additional circumstance, and (c) here, Plaintiff has failed to allege facts plausibly suggesting that the single incident alleged resulted from a municipal policy or custom. (*Id*. at 17-19 [attaching pages "7" through "9" of Village Defs.' Memo. of Law].)

Fourth, argues the Village Defendants, Plaintiff's claims under the Fourth Amendment must be dismissed because, according to her own factual allegations, her dogs were taken by the fire, not the Village Defendants, who were trying to save her property, and who did not arrest her. (*Id*. at 19 [attaching page "9" of Village Defs.' Memo. of Law].)

Fifth, argues the Village Defendants, Plaintiff's claims under the Fifth Amendment must be dismissed because that amendment applies only to the United States government, not a village. (*Id*.)

Sixth, argues the Village Defendants, Plaintiff's claims under the Fourteenth Amendment must be dismissed because she does not alleged facts plausibly suggesting that the Village Defendants had sufficient time to conduct a hearing before the dogs' death or even that they deprived Plaintiff of her property (for purposes of a procedural due process claim). (*Id*.)

Seventh, argues the Village Defendants, Plaintiff's claims under the Sixth Amendment must be dismissed because, according to her own factual allegations, the Village Defendants did not arrest her, nor were any criminal proceedings initiated against her. (*Id*. at 19-20 [attaching pages "19" and "20" of Village Defs.' Memo. of Law].)

Eighth, argues the Village Defendants, Plaintiff's claims under the First Amendment must be dismissed, because she has failed to allege facts plausibly suggesting that (a) one's request that her dogs be rescued is speech protected under the First Amendment (especially when that request is made in disruption of emergency personnel), (b) the Village Defendants' actions were motivated, or substantially caused, by that speech, or (c) the City Defendants' actions effectively chilled future such speech. (*Id*. at 20-21 [attaching pages "10" and "11" of Village Defs.' Memo. of Law].)

Ninth, argues the Village Defendants, Plaintiff's claim of deliberate indifference to her serious medical needs fails to allege facts plausibly suggesting that the Village Defendants were personally involved in the denial of her medical treatment. (*Id*. at 33-34 [attaching pages "23" and "24" of Village Defs.' Memo. of Law].)

Tenth, argues the Village Defendants, Plaintiff's claims against Defendant John Does #6 through #10 must be dismissed because (a) she has failed to allege facts plausibly suggesting that they were personally involved in the constitutional violations alleged, and (b) in any event, they are protected from liability as a matter of law by the doctrine of qualified immunity based on Plaintiff's own factual allegations. (*Id*. at 21-23 [attaching pages "11" through "13" of Village Defs.' Memo. of Law].)

Eleventh, argues the Village Defendants, Plaintiff's claims under the federal PETS Act must be dismissed for lack of standing, because that statute merely provides federal aid to states after natural disasters, and does not provide an explicit right of recovery from a non-federal government entity. (*Id*. at 23-24 [attaching pages "13" and "14" of Village Defs.' Memo. of Law].)

Twelfth, argues the Village Defendants, Plaintiff's state law claims must be dismissed because (a) there is no such statute as the New York Tort Liability Act, (b) they are barred by the one-year-ninety-day limitations period imposed by Gen. Municipal Law 50-i, and/or the one-year limitations period imposed by N.Y. C.P.L.R. § 215(3), (c) the Village Defendants are protected from liability as a matter of law by the doctrine of qualified immunity based on Plaintiff's own factual allegations, (d) her claims against Defendant John Does #6 through #10 are duplicative of her claims against Defendant Village of Scotia, (e) the Village Defendants owed Plaintiff no special duty of care for purposes of a negligence claim (much less a duty to save her pets), (f) her negligent-supervision claim is redundant of her claim premised on a theory of respondeat superior, (g) the discretionary decision not to enter a home while fighting a fire does not constitute an exercise of dominion over the pets inside the home for purposes of a conversion claim, (h) firefighters are authorized by law to enter property for the purpose of putting out a fire that poses an imminent public or private injury, and to conduct any investigation thereafter, (i) her other claims (i.e., for abuse of process, malicious prosecution, intentional infliction of emotional distress, and negligent infliction of emotional distress) are unsupported by factual allegations plausibly suggesting the elements necessary to state such claims, (j) her claim for punitive damages against the Defendant Village of Scotia is barred as a

matter of law, and (k) no private right of action under the New York State Constitution exists where, as here, remedies are available under 42 U.S.C. § 1983. (*Id*. at 24-34 [attaching pages "14" through "24" of Village Defs.' Memo. of Law].)

### 2. Plaintiff's Opposition Memorandum of Law

Generally, in her opposition memorandum of law, Plaintiff asserts five arguments. (Dkt. No. 40 [Plf.'s Opp'n Memo. of Law].)

First, argues Plaintiff, the Village Defendants' motion should be denied because it relies on assertions and allegations made in defense counsel's affidavit and memorandum of law, which do not constitute admissible evidence based on personal knowledge. (*Id*. at 7-10.)

Second, argues Plaintiff, she has stated a claim upon which relief can be granted, because, while her Amended Complaint is "inartful," its allegations are factual and particularized to the events described, giving fair notice to the Village Defendants of the claims against them, and allowing the Court to draw the reasonable inference that the Village Defendants are liable for the misconduct alleged. (*Id*. at 11-12.)

Third, Plaintiff has stated a claim against Defendant Village of Scotia under 42 U.S.C. 1983, because, by alleging that 26 firefighters put out a fire in 18 minutes but neglected to then rescue or even check any of the dogs after the fire, she has alleged facts plausibly suggesting that firefighters lacked the necessary "sensitive training" to "the changing dynamics of a family," and the fact that to some people a pet is similar to "a human child." (*Id*. at 12-20.)

Fourth, Plaintiff has standing to assert a claim against the other Village Defendants because (a) they effectively killed her pets by letting those pets die under circumstances in which they could have easily saved those pets, and (b) the PETS Act was intended to rectify the

problem of residents, as well as first responders, refusing to evacuate pets during a disaster. (*Id.* at 12-20.)

Fifth, Plaintiff's claims are not time barred, because (a) she timely served the Village Defendants with a notice of claim by certified mail, and (b) she duly filed her original Complaint in this Court on February 15, 2012. (*Id.* at 20.)

### 3.     Village Defendants' Reply Memorandum of Law

Generally, in their reply memorandum of law, the Village Defendants assert three arguments. (Dkt. No. 46, Attach. 2 [Village Defs.' Reply Memo. of Law].)

First, argue the Village Defendants, Plaintiff's claims should be dismissed for the reasons previously identified by the Village Defendants (e.g., failure to state a claim, lack of standing, the statute of limitations, the doctrine of qualified immunity, and the duplicative nature of her official-capacity claims). (*Id.* at 7 [attaching page "1" of Village Defs.' Reply Memo. of Law].)

Second, argue the Village Defendants, Plaintiff's argument that the Village Defendants' motion to dismiss should be denied because they failed to submit admissible record evidence in support of that motion misunderstands both (a) the procedural nature of the attorney affidavit submitted by the Village Defendants, and (b) the legal standard governing a motion to dismiss for failure to state a claim, pursuant to which evidence may not even be considered. (*Id.* at 8-9 [attaching pages "2" and "3" of Village Defs.' Reply Memo. of Law].)

Third, argue the Village Defendants, Plaintiff's statute-of-limitations argument is unavailing for the following three reasons: (a) Defendants John Doe # 6 through # 10 were named for the first time in the Amended Complaint, as recognized in Magistrate Judge Treece's Order of October 15, 2012 (Dkt. No. 9, at 2-3); (b) Plaintiff cannot toll the statute of limitations

by relying on her original Complaint, which was dismissed by the Court's Decision and Order of June 12, 2012 (Dkt. No. 5), and is thus a nullity; and (c) regardless of whether she filed a notice of claim, her state-law negligence claims must be commenced within one year and 90 days of the day of the incident (i.e., November 17, 2010), as required by N.Y. Gen. Municipal Law § 50-i, and her state-law intentional-tort claims must be commenced within one year of the day of the incident, as required by N.Y. C.P.L.R. § 215(3). (*Id*. at 10-11 [attaching pages "4" and "5" of Village Defs.' Reply Memo. of Law].)

> **D.** **Parties' Briefing on County Defendants' Motion to Dismiss**
>
> **1.** **County Defendants' Memorandum of Law in Chief**

Generally, in their memorandum of law in chief, the County Defendants assert twelve arguments with regard to Plaintiff's claims against them. (Dkt. No. 36, Attach. 1 [Cnty. Defs.' Memo. of Law].)

First, argue the County Defendants, Plaintiff has failed to allege facts plausibly suggesting that she has standing to sue due to the fact that, inter alia, there was no special relationship between Defendant County and Plaintiff, there was no County policy or procedure that caused her dogs to die, and Defendant County did not cause an invasion of any of Plaintiff's legally protected interests. (*Id*. at 14-16 [attaching pages "4" through "6" of Cnty. Defs.' Memo. of Law].)

Second, argue the County Defendants, there is no private right of action under the Stafford Act against non-federal governmental defendants. (*Id*. at 16-17 [attaching pages "6" and "7" of Cnty. Defs.' Memo. of Law].)

Third, argue the County Defendants, Plaintiff's claims against Defendants La Violette and Rudolphsen in their official capacities are duplicative and redundant of her claims against Defendant County. (*Id*. at 17 [attaching page "7" of Cnty. Defs.' Memo. of Law].)

Fourth, argue the County Defendants, based on Plaintiff's own factual allegations, Defendants La Violette and Rudolphsen are protected from liability as a matter of law by the doctrine of qualified immunity. (*Id*. at 17-19 [attaching pages "7" through "9" of Cnty. Defs.' Memo. of Law].)

Fifth, argue the County Defendants, Plaintiff fails to state a claim for negligence because (a) Defendant County owed Plaintiff no duty of care, and (b) Defendant County may not be held liable for discretionary efforts to extinguish a fire. (*Id*. at 19-23 [attaching pages "9" through "13" of Cnty. Defs.' Memo. of Law].)

Sixth, argue the County Defendants, Plaintiff has failed to state a claim against the County under 42 U.S.C. § 1983, because (a) a municipality can be liable under Section 1983 only if the action alleged to be unconstitutional was the result of an official policy or custom, (b) generally an official policy cannot be inferred from a single incident of illegality, absent some additional circumstance, and (c) here, Plaintiff has failed to allege facts plausibly suggesting that the single incident alleged resulted from a municipal policy or custom. (*Id*. at 23-27 [attaching pages "13" through "17" of Cnty. Defs.' Memo. of Law].)

Seventh, argue the County Defendants, Plaintiff fails to state either a substantive or procedural due process claim under the Fourteenth Amendment, because (a) the County afforded her all process that was due under the circumstances, (b) the County Defendants owed her no duty of care, and (c) recognizing a due process right under the circumstances would make the

18

Fourteenth Amendment into "a font of tort law." (*Id*. at 27-28 [attaching pages "17" and "18" of Cnty. Defs.' Memo. of Law].)

Eighth, argue the County Defendants, Plaintiff fails to state a right-to-counsel claim under the Sixth Amendment, because she has not alleged facts plausibly suggesting (a) the initiation of a criminal prosecution of Plaintiff, and (b) the personal involvement of the County Defendants in that prosecution. (*Id*. at 28-29 [attaching pages "18" and "19" of Cnty. Defs.' Memo. of Law].)

Ninth, argue the County Defendants, Plaintiff fails to state a claim under the Fifth Amendment, because, again, she has not alleged facts plausibly suggesting the initiation of a criminal prosecution of Plaintiff (or the existence of any compelled statements by Plaintiff). (*Id*. at 29 [attaching page "19" of Cnty. Defs.' Memo. of Law].)

Tenth, argue the County Defendants, Plaintiff fails to state a claim under the Fourth Amendment, because she has not alleged facts plausibly suggesting an unreasonable search or seizure. (*Id*.)

Eleventh, argue the County Defendants, Plaintiff fails to state a claim for negligent supervision and training, because Plaintiff has not alleged facts plausibly suggesting (a) that the individual County Defendants acted outside the scope of his employment during the time in question, or (b) that the County Defendants knew, or should have known, of the events of which Plaintiff complains. (*Id*. at 30-31 [attaching pages "20" and "21" of Cnty. Defs.' Memo. of Law].)

Twelfth, argue the County Defendants, Plaintiff failed to comply with two of the notice-of-claim requirements of N.Y. Gen. Municipal Law § 50-i(1): an allegation that service at least

30 days before the commencement of the action, and an allegation that adjustment or payment of the claim has been neglected or refused. (*Id*. at 31-32 [attaching pages "21" and "22" of Cnty. Defs.' Memo. of Law].)

Thirteenth, argue the County Defendants, Plaintiff's state-law claims are time barred, because all of those claims had to be, but were not, commenced within one year and 90 days of the day of the incident (i.e., November 17, 2010), as required by N.Y. Gen. Municipal Law § 50-i. (*Id*. at 33 [attaching page "23" of Cnty. Defs.' Memo. of Law].)

### 2. Plaintiff's Opposition Memorandum of Law

Generally, in her opposition memorandum of law, Plaintiff asserts the same four arguments that she asserts in opposition to the Village Defendants' motion, which are described above in Part II.C.2. of this Decision and Order. (Dkt. No. 43 [Plf.'s Opp'n Memo. of Law].)

### 3. County Defendants' Reply Memorandum of Law

Generally, in their reply memorandum of law, the Village Defendants assert nine arguments. (Dkt. No. 51 [Cnty. Defs.' Reply Memo. of Law].)

First, argue the County Defendants, because Plaintiff is a lawyer, she need not be afforded the special solicitude normally afforded to *pro se* litigants. (*Id*. at 11-13 [attaching pages "1" through "3" of Cnty. Defs.' Reply Memo. of Law].)

Second, argue the County Defendants, Plaintiff has failed to identify any applicable federal statute or constitutional provision intended to create enforceable rights, privileges or immunities necessary to confer standing on her under the circumstances. (*Id*. at 13-14 [attaching pages "3" and "4" of Cnty. Defs.' Reply Memo. of Law].)

Third, argue the County Defendants, Plaintiff has failed to oppose the qualified immunity argument asserted by Defendants La Violette and Rudolphsen, thus conceding that argument. (*Id*. at 14-15 [attaching pages "4" and "5" of Cnty. Defs.' Reply Memo. of Law].)

Fourth, argue the County Defendants, Plaintiff's policy-or-custom allegations are purely conclusory. (*Id*. at 5-6 [attaching pages "5" and "6" of Cnty. Defs.' Reply Memo. of Law].)

Fifth, argue the County Defendants, Plaintiff's due process allegations are purely conclusory (and, in any event, negligence cannot give rise to a claim under the Fourteenth Amendment and 42 U.S.C. § 1983). (*Id*. at 17-19 [attaching pages "7" through "9" of Cnty. Defs.' Reply Memo. of Law].)

Sixth, argue the County Defendants, Plaintiff's claim of negligent supervision and training is purely conclusory (and, in any event, were not sufficiently stated in her notice of claim). (*Id*. at 20-21 [attaching pages "10" and "11" of Cnty. Defs.' Reply Memo. of Law].)

Seventh, argue the County Defendants, Plaintiff has failed to allege facts plausibly suggesting a violation of her rights under the Fourth, Fifth or Sixth Amendments. (*Id*. at 21-22 [attaching pages "11" and "12" of Cnty. Defs.' Reply Memo. of Law].)

Eighth, argue the County Defendants, Plaintiff has failed to oppose the County Defendants' argument regarding her notice of claim, thus conceding that argument. (*Id*. at 22-23 [attaching pages "12" and "13" of Cnty. Defs.' Reply Memo. of Law].)

Ninth, if the Court dismisses Plaintiff's federal claims, it should decline to exercise supplemental jurisdiction over her state-law claims. (*Id*. at 23-24 [attaching pages "13" and "14" of Cnty. Defs.' Reply Memo. of Law].)

### E. Parties' Briefing on Plaintiff's Cross-Motion to Amend

#### 1. Plaintiff's Supporting Affidavit

Generally, in her supporting affidavit, Plaintiff asserts four arguments. (Dkt. No. 44, Attach. 1.)[1]

First, Plaintiff argues, the proposed amendments cannot possibly cause any prejudice to Defendants because [a] Defendants reviewed the original Complaint, and [b] Defendants had the opportunity to conduct an examination before trial pursuant to N.Y. Gen. Municipal Law § 50-h (and on Defendant exercised that right). (*Id.* at ¶¶ 3-4.)

Second, Plaintiff argues, the proposed amendments are warranted because "the criminal trial where Plaintiff alleges false arrest[] and false imprisonment was resolved in her favor," and "new evidence came to light" during the course of that trial. (*Id.* at ¶¶ 5-6.)

Third, Plaintiff argues, the proposed amendment to Paragraph 41 of the Amended Complaint is warranted because the Second Circuit's decision on March 12, 2013 in the case of *Carroll v. Cnty. of Monroe*, 712 F.3d 649 (2d Cir. 2013), constitutes an intervening change of controlling law, conferring on a municipality a duty to reasonably prepare for emergencies when companion animals are present in a household. (*Id.* at ¶¶ 7, 15.)

Fourth, the proposed amendments are warranted because "Plaintiff was . . . able to find information showing the plausibility of her claims, from the Dept. of Justice regarding the Schenectady Police Dept." (*Id.* at ¶ 8.)[2]

---

[1] Plaintiff is reminded that the place for legal arguments is a memorandum of law, not an affidavit. N.D.N.Y. L.R. 7.1(a)(1),(2).

[2] The Court notes that, while Plaintiff briefly references her cross-motion for leave to amend in her memoranda of law in opposition to Defendants' motions, she does not (in those memoranda) expand on any of the four reasons described above.

## 2.    Village Defendants' Opposition Memorandum of Law

Generally, in their opposition memorandum of law, the Village Defendants assert three arguments. (Dkt. No. 46, Attach. 2 [Village Defs.' Opp'n Memo. of Law].)

First, argue the Village Defendants, as against them, Plaintiff appears to be merely trying to amend her failure to train claim pursuant to 42 U.S.C. § 1983. However, the Second Circuit case relied on by Plaintiff does not, in fact, confer on a municipality a duty to save one's pets from a fire in the case of an emergency. Moreover, Plaintiff's proposed Second Amended Complaint does not allege facts plausibly suggesting that, before the incident in question, the Village Defendants had consistently ignored the lives of pets during fires. Similarly, the proposed Second Amended Complaint does not allege facts plausibly suggesting that the Village Defendants owed Plaintiff any sort of special duty. (*Id*. at 11-14 [attaching pages "5" through "8" of Village Defs.' Opp'n Memo. of Law].)

Second, argue the Village Defendants, none of the state law causes of action asserted in Plaintiff's proposed Second Amended Complaint are set forth in her Notice of Claim against the Village Defendants. Furthermore, they are time barred, for the reasons stated in the Village Defendants' motion to dismiss. (*Id*. at 13 [attaching page "7" of Village Defs.' Opp'n Memo. of Law].)

Third, argue the Village Defendants, the claims of negligent supervision, trespass and conversion fail to state a claim for the for the reasons stated in the Village Defendants' motion to dismiss. (*Id*. at 14 [attaching page "8" of Village Defs.' Opp'n Memo. of Law].)

### 3. City Defendants' Opposition Memorandum of Law

Generally, in their opposition memorandum of law, the City Defendants assert five arguments. (Dkt. No. 49, Attach. 6 [City Defs.' Opp'n Memo. of Law].)

First, argue the City Defendants, Plaintiff has failed to comply with Local Rule 7.1(a)(4) of the Local Rules of Practice of this Court, which requires her to "identify the amendments in the proposed pleading, either through the submission of a red lined version of the original pleading or other equivalent means." N.D.N.Y. L.R. 7.1(a)(4): while Plaintiff represents to the Court that she has red-lined *all* of her proposed changes, in fact she has red-lined only *some* of those proposed changes. (*Id*. at 16 [attaching page "13" of City Defs. Opp'n Memo. of Law.)

Second, argue the City Defendants, Plaintiff's proposed Second Amended Complaint repeats the inadequately pled claims asserted in her Amended Complaint. (*Id*. at 17 [attaching page "14" of City Defs. Opp'n Memo. of Law.) For example, argue the City Defendants, even though Plaintiff has conceded (in her opposition memorandum of law) that a number of the claims in her Amended Complaint are deficient, she has failed to amend those claims in her proposed Second Amended Complaint. (*Id*.)

Third, argue the City Defendants, Plaintiff's proposed Second Amended Complaint asserts new allegations that have nothing to do with the incident alleged in the original Complaint and Amended Complaint (including an allegation that Plaintiff injured herself on a City sidewalk). (*Id*.)

Fourth, argue the City Defendants, Plaintiff's proposed Second Amended Complaint asserts new allegations that conclusorily attempt to correct pleading deficiencies identified by Defendants' in their motions to dismiss. (*Id*.

Fifth, argue the City Defendants, the exhibit attached to Plaintiff's supporting affidavit do not provide any further factual allegations supporting her claims. (*Id*. at 18 [attaching page "15" of City Defs. Opp'n Memo. of Law.)

### 4. County Defendants' Opposition Memorandum of Law

Generally, in their opposition memorandum of law, the County Defendants assert three arguments. (Dkt. No. 51 [Cnty. Defs.' Opp'n Memo. of Law].)

First, argue the County Defendants, Plaintiff did not properly seek leave to replead through a formal motion (including a memorandum of law) on notice to all the parties. (*Id*. at 24 [attaching page "14" of Cnty. Defs. Opp'n Memo. of Law.)

Second, argue the County Defendants, Plaintiff has already had a chance to amend, and has failed to show cause for her proposed amendments. (*Id*. at 25 [attaching page "15" of Cnty. Defs. Opp'n Memo. of Law.)

Third, argue the County Defendants, repleading would be futile in that the proposed Second Amended Complaint would not cure the defects in her Amended Complaint, which are not merely formal but substantive. (*Id*. at 25-26 [attaching pages "15" and "16" of Cnty. Defs. Opp'n Memo. of Law.)

## II. GOVERNING LEGAL STANDARDS

### A. Motion to Dismiss for Failure to State a Claim

Because the parties have demonstrated (in their motion papers) an adequate understanding of the legal standard governing a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the Court will not recite that legal standard in detail in this Decision and Order, which (again) is intended primarily for the review of the parties. Rather, the

Court will merely direct the reader to the Court's decision in *Wade v. Tiffin Motorhomes, Inc.*, 05-CV-1458, 2009 WL 3629674, at *3-5 (N.D.N.Y. Oct. 27, 2009) (Suddaby, J.), which accurately recites that legal standard.

**B.    Motion to Dismiss for Lack of Subject-Matter Jurisdiction**

"It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). Generally, a claim may be properly dismissed for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) where a district court lacks constitutional or statutory power to adjudicate it. *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000). A district court may look to evidence outside of the pleadings when resolving a motion to dismiss for lack of subject-matter jurisdiction. *Makarova*, 201 F.3d at 113. The plaintiff bears the burden of proving subject-matter jurisdiction by a preponderance of the evidence. *Makarova*, 201 F.3d at 113 (citing *Malik v. Meissner*, 82 F.3d 560, 562 [2d Cir. 1996]). When a court evaluates a motion to dismiss for lack of subject-matter jurisdiction, all ambiguities must be resolved and inferences drawn in favor of the plaintiff. *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (citing *Makarova*, 201 F.3d at 113).

**C.    Motion to Amend a Pleading**

Motions for leave to amend a complaint are governed by Fed. R. Civ. P. 15, which states that leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Manson v. Stacescu*, 11 F.3d 1127, 1133 (2d Cir.1993). Nevertheless, leave to amend a complaint is not automatic; and a court may deny a motion for leave to amend where there is an apparent or declared reason not to grant leave to

amend, "such as [1] undue delay, bad faith or dilatory motive on the part of the movant, [2] repeated failure to cure deficiencies by amendments previously allowed, [3] undue prejudice to the opposing party by virtue of the allowance of the amendment, [4] futility of amendment, etc." *Foman*, 371 U.S. at 182; *S.S. Silberblatt, Inc. v. E. Harlem Pilot Block–Bldg. 1 Hous.*, 608 F.2d 28, 42 (2d Cir. 1979). With regard to the fourth ground for denial, "[a]n amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).

## III.    ANALYSIS

### A.    City Defendants' Motion to Dismiss

After carefully considering the matter, the Court finds that, for the reasons stated in the City Defendants' memoranda of law, all of Plaintiff's claims against them should be dismissed except her claims of false arrest, false imprisonment, excessive force and battery, which are more appropriately addressed on a motion for summary judgment, under the circumstances. *See, supra,* Parts III.B.1. and III.B.3. of this Decision and Order.[3] To this analysis, the Court adds seven points.

First, with regard to Plaintiff's Fourth Amendment false-arrest claim and state-law false-imprisonment claim, she has alleged that, on the evening of November 17, 2010, in Schenectady, New York, Defendants Mattice, John Doe #1, Jane Doe #1, John Doe #2, and John Doe #3 intentionally and falsely arrested Plaintiff for exercising her right to peacefully request the rescue

---

[3]    The Court reminds Defendants that any future motion for summary judgment must be supported by a statement of material facts supported by specific citations to admissible record evidence (such as declarations based on personal knowledge, exhibits thereto, deposition transcripts, interrogatory responses, responses to requests for admission, and other materials). *See* N.D.N.Y. L.R. 7.1(a)(2),(3); Fed. R. Civ. P. 56(c)(1)(A),(4).

of her dogs from the fire in her home merely because they were "sick of [her]" seeking the rescue of her dogs, and then detained her, and segregated her from others, at the Schenectady Police Station and Ellis Hospital for "several hours," causing serious personal injuries and special damages to her (including "humiliation" and "degradation" in front of her neighbors, who knew her to be an attorney). (Dkt. No. 8, at ¶¶ 3, 10, 12, 14, 36, 43, 59, 60, 63, 92-94, 159, 167, 168, 172, 173, 207-209, 211, 212, 227-233.) The City Defendants' reliance on Plaintiff's allegation that they acted "with reckless disregard" is misplaced. Liberally construed, that allegation regards the "deaths of plaintiff's dogs" and "her physical injuries," not her false arrest and detention. (Dkt. No. 8, at ¶ 211 [alleging that Defendants, "either with the specific intent to violate the plaintiff's civil rights or with a reckless disregard of the probability of causing that violation, caused the deaths of plaintiff's dogs, and her physical injuries in such an outrageous manner that plaintiff is entitled to compensatory and punitive damages therefore"].) Similarly, the City's Defendants' reliance on a purported lack of cognizable damages is unavailing. As an initial matter, a physical injury to Plaintiff is not required to state a claim of false arrest: rather, consciousness of confinement (without one's consent) is sufficient injury. *See Weyant v. Okst*, 101 F.3d 845, 853 (2d Cir. 1996) (reciting elements of false-arrest claim). Moreover, the alleged "humiliation" and "degradation" of plaintiff in front of her neighbors, who knew her to be an attorney, would appear to constitute the sort of cognizable damages identified by the City Defendants. The Court notes that, while the Court imagines Plaintiff may have been arrested for obstructing governmental administration, that fact is not clear from the City Defendants' memorandum of law. (Dkt. No. 23, Attach. 13, at 30 [attaching page "22" of City Defs.' Memo. of Law].) Nor does the Amended Complaint make clear that she intimidated the officers, used

physical force against them, or physically interfered with their official function. (Dkt. No. 8, at ¶¶ 19-60.) Furthermore, the status of that criminal proceeding is unclear from the parties' motion papers. For all these reasons, the Court finds that Plaintiff has–albeit barely–alleged facts plausibly suggesting a false-arrest claim and false-imprisonment claim.

Second, with regard to Plaintiff's Fourth Amendment excessive-force claim and state-law battery claim, she has alleged that Defendant Mattice and John Doe #1 callously "dragged" her to police car,"thr[e]w[]" her in the back with "undue and unnecessary" force, and then "thr[e]w[]" her into a "dirty cell" merely because they were "sick of [her]" seeking the rescue of her dogs, "causing her to suffer bruising," "physical injuries," "faint[ing]," and the "aggravation of her preexisting injuries," which included a "prior Traumatic Brain Injury." (Dkt. No. 8, at ¶¶ 59, 62, 63, 67, 80, 81, 90, 196-202, 272-277.) The City Defendants' argument that Plaintiff has not alleged sufficient injury is unpersuasive. In order to state a claim for excessive force, Plaintiff must allege facts plausibly suggesting that the City Defendants used force that was objectively unreasonable under the circumstances and that caused Plaintiff to suffer at least some harm. The harm need not be serious or even significant, as long as it either is more than de minimis or involves force that is repugnant to the conscience of mankind. *See Perri v. Bloomberg*, 06-CV-0403, 2007 WL 2891332, at *7 (E.D.N.Y. Sept. 28, 2007) ("A pretrial detainee states a claim for excessive force 'even if the victim does not suffer serious, or significant injury, provided that the amount of force used is more than de minimis, or involves force that is repugnant to the conscience of mankind.'"). Here, the Court finds that Plaintiff has–again, albeit barely–alleged facts plausibly suggesting an excessive-force claim and a battery claim.

Third, with regard to Plaintiff's other claims (which the Court is dismissing), the Court will not extra-liberally construe her opposition memorandum of law as effectively amending her Amended Complaint for each of three alternative reasons: (a) Plaintiff is an attorney admitted to practice in this Court; (b) the allegations contained in her opposition memorandum of law are inconsistent with her Amended Complaint, because they are conspicuously missing from that otherwise-detailed Amended Complaint; and (c) she has already been afforded the opportunity to file an Amended Complaint.[4]  Nor will the Court construe her 321-pages of extrinsic materials as part of her Amended Complaint.  Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties, without contestation), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[5]  Here, the extrinsic materials fall into none of those four categories.  Furthermore, while the Court can take judicial notice of the prior federal court proceedings referenced by Plaintiff, those proceedings do not correct the pleading defects in her claims.

---

[4]     The Court will set aside the fact that it is not entirely clear how Defendants would admit or deny those new factual allegations and claim in an Answer containing matching numbered paragraphs, in accordance with Fed. R. Civ. P. 8(b) and 10(b).  It will also set aside the fact that the County Defendants have already filed their Answer to the Amended Complaint, requiring them to file an Amended Answer.  (Dkt. No. 33.)

[5]     *See Fahs Const. Group, Inc. v. Gray*, 10-CV-0129, 2012 WL 2873532, at *2, n.1 (N.D.N.Y. July 12, 2012) (Suddaby, J.) (collecting authorities).

Fourth, the Court agrees with the City Defendants that, in this District, when a non-movant fails to oppose a legal argument asserted by a movant in support of a motion, the movant's burden with regard to that argument has been lightened such that, in order to succeed on that argument, the movant need only show that the argument possesses facial merit, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n. 1 (N.D.N.Y. Oct.30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL 2473509, at *2 & n. 3 (N.D.N.Y. Aug .7, 2009) (Suddaby, J.) (collecting cases). Here, the claims dismissed by the Court are being dismissed, in part, because of that lightened burden.

Fifth, contrary to Plaintiff's argument, the Amended Complaint, even when construed with special liberality, does not allege facts plausibly suggesting the existence of a municipal policy or custom through (1) notice to the Police Department of the misconduct alleged in this action, and (2) failure to discipline the offending officers either before or after the incident in question.

Sixth, Plaintiff's conversion claim is dismissed on the alternative ground that her Amended Complaint does not allege facts plausibly suggesting that, even if some of the dogs had still been alive after the fire had been extinguished, they would have lived longer had they been brought out of the home. As an initial matter, the Court notes that the conclusory nature of Paragraphs 52, 53, 58, 82, 83, 84, 85, 95, 151, 202, 209, 216 of Plaintiff's Amended Complaint reveals that she possesses mere supposition, not personal knowledge, of the alleged fact that the

dogs survived the fire. (Dkt. No. 8.) Indeed, Plaintiff's use of the phrase "upon information and belief" in Paragraphs 105 through 109 reveals her lack of personal knowledge of any post-fire "cries and/or yowls" by the dogs. (*Id*.) Moreover, her use of the phrases "any dogs still alive" and "such of her dogs who were still alive," in Paragraphs 69 and 95, reveals the speculative nature of the allegation. (*Id*.) Similarly, any conclusion that Plaintiff possessed personal knowledge that "barking and cries" could be heard "late into the night after emergency workers left" (as alleged in Paragraph 28) is undermined by her allegations that she was in either jail or the hospital at that time. (*Id*.) Granted, in Paragraph 100, she alleges that "her neighbor" heard her "dogs crying at night, after the fire." (*Id*.) However, it is speculative to conclude that the neighbor is referring to the middle of the night as opposed to the time between the extinguishing of the fire and Plaintiff's arrival at the scene. Even if the neighbor was referring to the middle of the night, it is speculative to conclude that the barking came from a dog other than Plaintiff's "black lab" named "Osa," which admittedly escaped the fire. (*Id*.) Moreover, even if Plaintiff's dog "Satin" survived the fire, it is speculative to conclude that "Satin" died *after* the firefighters left, based merely on a veterinarian's statement that Satin was "still warm to the touch" the next morning. Finally, the Court notes that, setting aside the interference with a fire investigation that would have resulted, the City Defendants (all but two of whom were police officers, not firefighters) may have endangered Plaintiff's safety (and incurred liability) by letting Plaintiff, in a distraught state, rush back into what is alleged to have been a burned and/or smoldering home.

Seventh, Plaintiff's late-blossoming Eighth Amendment claim (which actually arises under the Fourteenth Amendment) is rejected for the alternative reason that it fails to allege facts plausibly suggesting that the City Defendants were deliberately indifferent to any of Plaintiff's

serious medical needs. For example, even construed together, the Amended Complaint and pages 28 through 30 of her opposition memorandum of law do not allege facts plausibly suggesting the serious medical need that Plaintiff had from the moment she entered the police car to the moment she was brought to the hospital. (It is difficult to conclude that such condition was Plaintiff's pre-existing "traumatic brain injury," given that she was well enough to be released from a hospital before the fire.) Nor do the Amended Complaint and opposition memorandum of law allege facts plausibly suggesting that Defendants' knowledge of that condition and their alleged delay in her giving her treatment reveals deliberate indifference, which is a mental state akin to criminal recklessness.

For all of these reasons, the Court dismisses all of Plaintiff's claims against the City Defendants, except her claims of false arrest, false imprisonment, excessive force and battery.

**B.      Village Defendants' Motion to Dismiss**

After carefully considering the matter, the Court finds that, for the reasons stated in the Village Defendants' memoranda of law, all of Plaintiff's claims against them should be dismissed. *See, supra,* Parts III.C.1. and III.C.3. of this Decision and Order. To this analysis, the Court adds six points.

First, in rendering this finding, the Court relies also on five of the seven points made above in Part III.A. of this Decision and Order: (1) the 321-pages of extrinsic materials attached by Plaintiff to her opposition memorandum of law may not be considered as part of her Amended Complaint under the circumstances; (2) Plaintiff's fails to oppose numerous of the legal arguments asserted (i.e., the Village Defendants' second argument, fifth argument, sixth argument, seventh, eighth argument, ninth argument, tenth argument, and part of their twelfth

argument) lightens their burden on their motion; (3) the Amended Complaint lacks factual allegations plausibly suggesting the existence of a municipal policy or custom through notice and a lack of discipline; (4) the Amended Complaint lacks factual allegations plausibly suggesting that, even if some of the dogs had still been alive after the fire had been extinguished, they would have lived longer had they been brought out of the home; and (5) Plaintiff's inadequate-medical-care claim is both late-blossoming and deficient.

Second, as alluded to by the Village Defendants, generally, a municipality bears no liability for the negligent performance by its agents of governmental functions absent the existence of a special relationship between the injured party and the municipality (the facts of which have not been alleged here). Here, by alleging that one Village Defendant informed her (based on a report from another Village Defendant) that her dogs were dead (and that a criminal investigation had begun), Plaintiff has alleged, at most, that the Village Defendants were negligent. (Dkt. No. 8, at ¶¶ 24-25.) Even if the Village Defendants could somehow be liable for recklessness without such a special relationship, Plaintiff does not allege facts plausibly suggesting that any Village Defendant actually heard dogs barking after the fire; rather, it was Plaintiff's neighbor who allegedly heard dogs barking at some point. In any event, with regard to the discretionary nature of a firefighter's decision of whether or not to handle, and attempt to resuscitate, an injured dog during a fire or a criminal investigation after a fire, that discretion appears consistent with both common sense and the law: for example, generally, the so-called "firefighter's rule" (*see* N.Y. Gen. Obligations Law § 11-106) prevents a firefighter from recovering damages from another should he be injured during such a rescue (e.g., from a dog bite). Here, it is worth noting that the seven dogs in question appear to have been larger than lap dogs. (Dkt. No. 8, at ¶ 114.)

Third, regarding Plaintiff's false arrest claim against the Village Defendants, her allegation that a Village Defendant's yelled to the city police officers, "Get her out of here!" (Dkt. No. 8, at ¶ 29) is not an allegation plausibly suggesting that the Village Defendant had the authority, or even the intent, to order the *arrest* of Plaintiff.

Fourth, regarding Plaintiff's attempt to base part of her Amended Complaint on the PETS Act, the Court agrees with the Village Defendants that the PETS Act is an amendment to the Stafford Disaster Relief and Emergency Assistance Act. *See, e.g.*, 42 U.S.C. §§ 5170b(a)(3)(J), 5196(e)(4), (j)(2). The Court agrees also that the Stafford Act does not contain language expressly providing for a private right of action by a citizen against non-federal governmental entities. *See Diversified Carting, Inc. v. City of New York*, 423 F. Supp.2d 85, 96 (S.D.N.Y. 2005) ("Diversified does not have an express or an implied right of recovery against non-federal government entities pursuant to the Stafford Act."), *accord, Duffy v. Kent Cnty. Levy Court*, 09-CV-0817, 2011 WL 748487, at *5 (holding that the Stafford Act did not create a private right of action, in suit by a citizen against municipality).[6] Nor does any New York State statute *authorizing* the establishment of local response plans and/or teams to assists persons with household pets following a *natural disaster* or the declaration of a *local state of emergency* somehow give rise to a failure-to-train claim by Plaintiff against the Village Defendants under the circumstances.

---

[6] Indeed, it is far from clear that the Stafford Act provides a private right of action by a citizen against even the federal government. *See Sierra Club v. U.S. Army Corps of Eng'rs*, 446 F.3d 808, 813, n.1 (8th Cir. 2006) ("We have found no reported case interpreting 42 U.S.C. § 5170c, and the Stafford Act does not expressly provide for private rights of action."); *Graham v. Fed. Emergency Mgmt. Agency*, 149 F.3d 997, 1001 & n.1 (9th Cir.1998) (holding that the Stafford Act does not create a private right of action); *Ameika v. Moss*, 12-CV-1460, 2013 WL 5888118, at *6 (M.D. Pa. Nov. 1, 2013) ("In this circuit, no private right of action under the Stafford Act has been found.").

Fifth, with regard to Plaintiff's argument that the fire had been extinguished when the alleged misconduct occurred, the Court has found no authority for the point of law that the discretion afforded to fire departments at the scene of a fire is confined to efforts to extinguish the fire, and does not extend to efforts to investigate the cause of the fire (particularly when the investigation is a criminal one of at-large non-homeowners suspected of recently and intentionally starting the fire). *Cf. Laresca v. City of New York*, 485 N.Y.S.2d 120, 121 (N.Y. App. Div., 2d Dept. 1985) ("[I]t is well settled that a fire fighter may not maintain an action against a municipality based on its conduct *at the scene of a fire . . . .*") (emphasis added). The Court notes that, where it is suspected that a fire has been recently and intentionally started by non-homeowner suspects who are still at large, a fire department would appear to have a need to immediately investigate that fire.

Sixth, regarding the Village Defendants' statute-of-limitations argument, the relation-back rule of Fed. R. Civ. P. 15(c) appears to apply under the circumstances. The Amended Complaint appears to identify in more detail the Village John Doe Defendants alluded to in the caption and Paragraphs 27 and 69 of the original Complaint, satisfying Fed. R. Civ. P. (c)(1)(C). Alternatively, Plaintiff's claims against Defendant John Does #6 through #10 in her Amended Complaint appear to have arisen out of the transactions or occurrences set forth in the original Complaint, satisfying Fed. R. Civ. P. (c)(1)(B). As for the Village Defendants' argument that the original Complaint had been dismissed (and thus was a nullity) by the time she filed her Amended Complaint on August 24, 2012, that argument is incorrect: the Court's Decision and Order of June 12, 2012, ruled that Plaintiff's original Complaint *would be* dismissed if she did not file a satisfactory Amended Complaint. (Dkt. No. 5.) Nor is the Court even aware of a case requiring the original pleading to still be pending at the time of the amendment. As a result,

Plaintiff's state-law negligence claims are timely, and cannot be dismissed on the alternative ground of untimeliness. However, her state-law intentional-tort claims (which are governed by a one-year limitations period) are untimely, and are dismissed on that alternative ground.

For all of these reasons, the Court dismisses all of Plaintiff's claims against the Village Defendants.

### C.     County Defendants' Motion to Dismiss

After carefully considering the matter, the Court finds that, for the reasons stated in the County Defendants' memoranda of law, all of Plaintiff's claims against them should be dismissed. *See, supra,* Parts III.D.1. and III.D.3. of this Decision and Order.

To this analysis, the Court would add the numerous points made above in this Decision and Order, including the following: (1) the fact that the 321-pages of extrinsic materials attached by Plaintiff to her opposition memorandum of law may not be considered as part of her Amended Complaint under the circumstances; (2) the fact that *any* of Plaintiff's failures to oppose the County Defendants' numerous legal arguments asserted lightens their burden on their motion; (3) the fact that Plaintiff's argument that the County Defendants' failed to submit admissible record evidence in support of that motion misunderstands both (a) the procedural nature of the attorney affidavit submitted by the County Defendants, and (b) the legal standard governing a motion to dismiss for failure to state a claim; (4) the fact that Plaintiff has failed to allege facts plausibly suggesting that (a) the County Defendants' actions was so outrageously arbitrary as to be a gross abuse of governmental authority (for purposes of a substantive due process claim), or (b) the County Defendants had sufficient time to conduct a hearing before the dogs' death or even that they deprived Plaintiff of her property (for purposes of a procedural due process claim); (5) the fact that Plaintiff does not allege facts plausibly suggesting that a special

relationship existed between the County Defendants and Plaintiff under the circumstances (and that, in any event, Plaintiff does not allege facts plausibly suggesting that any County Defendant actually heard dogs barking after the fire); (6) the fact that the discretion afforded to fire departments at the scene of a fire does not appear  confined to efforts to extinguish the fire, but appears to extend to efforts to investigate the cause of the fire (particularly when the investigation is a criminal one of at-large non-homeowners suspected of recently and intentionally starting the fire); (7) the fact that any New York State statute *authorizing* the establishment of local response plans and/or teams to assists persons with household pets following a *natural disaster* or the declaration of a *local state of emergency* does not somehow give rise to a failure-to-train claim by Plaintiff against the County Defendants under the circumstances; and (8) the fact that, while Plaintiff's state-law negligence claims are timely under the relation-back rule, and cannot be dismissed on that alternative ground, her  state-law intentional-tort claims (which are governed by a one-year limitations period) are untimely and are dismissed on that alternative ground.

### D.	Plaintiff's Cross-Motion to Amend

After carefully considering the matter, the Court finds that, for the reasons stated in the Defendants' opposition memoranda of law, Plaintiff's cross-motion to amend should be denied. *See, supra,* Parts III.E.2., III.E.3. and III.E.4. of this Decision and Order.  To this analysis, the Court adds five points.

First, the Court agrees with Defendants' arguments that Plaintiff's cross-motion is formally defective in that it contains an incomplete red-lining of her proposed Second Amended Complaint, no memorandum of law, and no motion on notice to the parties.  While the Court may well overlook these latter two deficiencies for a *pro se* litigant, it has difficulty doing so for an attorney admitted to practice in this Court.

Second, the Court finds undue delay on the part of Plaintiff. This case has been pending since February 15, 2012. Plaintiff's Amended Complaint was filed on August 24, 2012. Defendants' first motion to dismiss (highlighting the deficiencies in her Amended Complaint) was filed on November 12, 2012. However, Plaintiff did not reference her "cross-motion" until June 3, 2013. Furthermore, she did not submit her proposed Second Amended Complaint until June 5, 2013–six-and-a-half months after the filing of Defendants' first motion to dismiss, and nine-and-a-half months after the filing of her Amended Complaint. This delay is in no way excused by either (a) the unidentified discovery she received in the criminal proceeding against her, or (b) the Second Circuit's issuance of its unrelated decision in *Carroll v. Cnty. of Monroe*, 712 F.3d 649 (2d Cir. 2013). The Court notes that the vast majority of Plaintiff's proposed amendments appear to have nothing to do with these things.

Third, the Court finds that Plaintiff previously failed to cure the deficiencies in her claims by the amendments allowed by the Court on June 12, 2012. With due respect to Plaintiff, the undersigned does not perceive it to be the function of a United States district judge (especially one in a congested district) to conduct a year-and-a-half-long complaint-drafting seminar (with the help of motions to dismiss filed by defendants) for an attorney admitted to practice in the court, even in a civil rights case. *Cf. De Ponceau v. Bruner*, 09-CV-0605, 2012 WL 1014821, at *4 (N.D.N.Y. March 23, 2012) (Suddaby, J.) ("While special solicitude must be afforded to a pro se prisoner civil rights litigant, the undersigned does not perceive it to be the function of a United States district court (especially one in a congested district) to operate a two-and-a-half-year-long complaint-drafting seminar for that litigant, complete with three rounds of edits and rewrites.").

Fourth, the Court finds that Defendants will suffer at least some undue prejudice if the motion is granted. For the sake of brevity, the Court will set aside the fact that Defendants have already incurred the time and expense of filing a motion to dismiss. More important is the fact that the events at issue occurred on November 17, 2010, more than two-and-a-half years before the proposed second amended complaint was submitted on June 5, 2013. This sort of passage of time increases the likelihood of the fading of the memories of material witnesses, and the destruction of relevant documents, with regard to the new allegations. *See Geordiadis v. First Boston Corp.*, 167 F.R.D. 24, 25 (S.D.N.Y.1996) ("The passage of time always threatens difficulty as memories fade. Given the age of this case, that problem probably is severe already. The additional delay that plaintiff has caused here can only make matters worse.").

Fifth, even if the Court were to overlook the above-described facts, the Court could not overlook the fact that the proposed Second Amended Complaint is futile in that it fails to state a claim upon which relief can be granted.

**ACCORDINGLY**, it is

**ORDERED** that the City Defendants' motion to dismiss (Dkt. No. 23) is **<u>GRANTED</u> in part** and **<u>DENIED in part</u>** as described above in Part III.A. of this Decision and Order; and it is further

**ORDERED** that the Village Defendants' motion to dismiss (Dkt. No. 26) is **<u>GRANTED</u>**; and it is further

**ORDERED** that the County Defendants' motion to dismiss (Dkt. No. 36) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Plaintiff's cross-motion for leave to file a Second Amended Complaint (Dkt. No. 44) is **<u>DENIED</u>**; and it is further

**ORDERED** that all of Plaintiff's claims against Defendants are **<u>DISMISSED</u> except for** her following four claims against the City Defendants: **false arrest**, **false imprisonment**, **excessive force,** and **battery**; and it is further

**ORDERED** that Defendants file an answer to the Plaintiff's Complaint within 14 days of the date of this Memorandum-Decision & Order pursuant to Fed.R.Civ.P. Rule 12(a)(4)(a) and this case is referred back to Magistrate Judge Treece for the setting of pretrial scheduling deadlines.

<u>This Decision and Order expresses no opinion regarding the ability of Plaintiff's remaining claims to survive a properly filed motion for summary judgment</u>.

Dated: February 20, 2014
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge