UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CARMENCITA BRUNO,

                          Plaintiff,

                                                         1:12-CV-0285
v.                                                       (GTS/RFT)

CITY OF SCHENECTADY; THOMAS MATTICE,
City Police Officer; JOHN DOES #1 THROUGH #3,
City Police Officers; JANE DOE #1, City Police
Officer; MICHAEL DELLAROCCO, City Fire
Chief/Captain; and FAARSTAD, City Fire Chief,

                          Defendants.
_____

APPEARANCES:                                             OF COUNSEL:

CARMENCITA BRUNO
  Plaintiff, *Pro Se*
P.O. Box 64
Howes Cave, NY 12092

CARTER CONBOY, CASE, BLACKMORE,                          MICHAEL J. MURPHY, ESQ.
MALONEY & LAIRD, P.C.
20 Corporate Woods Boulevard
  Counsel for Defendants
Albany, NY 12211

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

        Currently before the Court, in this *pro se* civil rights action by Carmencita Bruno

("Plaintiff") against the above-captioned municipality and seven of its employees

("Defendants"), are Defendants' motion for summary judgment and Plaintiff's motion for

omnibus relief.  (Dkt. Nos. 100, 128.)  For the reasons set forth below, Defendants' motion for

summary judgment is granted, and Plaintiff's motion for omnibus relief is denied.

## I. RELEVANT BACKGROUND

### A. Claims Asserted in Plaintiff's Amended Complaint

Because the parties have (in their motion papers) demonstrated an adequate understanding of the relevant procedural history of this action, the alleged events giving rise to Plaintiff's claims, and the portions of Plaintiff's Amended Complaint that survived the Court's Decision and Order of February 20, 2014, the Court will not recite that information in this Decision and Order, which is intended primarily for the review of the parties.

Rather, the Court will merely note that, generally, liberally construed, Plaintiff's Amended Complaint alleges that, on the evening of November 17, 2010, Defendants callously mistreated her despite her repeated pleas for assistance following the death of her dogs in a fire in her home, which she was prevented from entering at the time. (Dkt. No. 8 [Plf.'s Am. Compl.].) The Court also notes that, generally, based on these factual allegations, the Amended Complaint asserts four claims against Defendants: (1) a claim of false arrest in violation of the Fourth Amendment; (2) a claim of false imprisonment in violation of New York State common law; (3) a claim of the use of excessive force in violation of the Fourth Amendment; and (4) a claim of battery in violation of New York State common law. (*Id.*; *see also* Dkt. No. 56 [Decision and Order of Feb. 20, 2014].)

### B. Parties' Briefing of Defendants' Motion for Summary Judgment

#### 1. Defendants' Memorandum of Law

Generally, in their memorandum of law, Defendants assert three arguments. (Dkt. No. 100, Attach. 12 [Defs.' Memo. of Law].) First, argue Defendants, Plaintiff's claims of false arrest under the Fourth Amendment and false imprisonment under New York State common law

should be dismissed, because Defendant Mattice had probable cause to arrest her on November 17, 2010, for Obstructing Governmental Administration under N.Y. Penal Law § 195.05, given that she repeatedly interfered in the Fire Department's efforts to put out the fire at her residence (by initially crossing the police tape to enter the scene of an emergency, deliberately attempting to re-cross the police tape despite Defendant Mattice's directions, and demanding that emergency personnel rescue her dogs as Defendant Mattice was attempting to carry out the directions of the Fire Chief. (*Id*. at 6-10 [attaching pages "2" through "6" of Defs.' Memo. of Law].)

Second, argue Defendants, Plaintiff's claim of excessive force under the Fourth Amendment should be dismissed because (a) the force used by Defendant Mattice was *de minimis,* (b) any harm sustained by Plaintiff was also *de minimis* (as evidenced by her medical records, which noted no bruising or other physical injuries), and (c) the forced used by Defendant Mattice was objectively reasonable under the circumstances to effect a lawful arrest (given that she repeatedly demanded that fire personnel rescue her dogs and attempted to re-cross the police tape despite being told not to do so by police officers, who were tasked with allowing the firefighters to do their jobs). (*Id*. at 10-13 [attaching pages "6" through "9" of Defs.' Memo. of Law].)

Third, argue Defendants, Plaintiff's claim of battery under New York State law should be dismissed because Defendant Mattice's use of force was *de minimis* and reasonable under the circumstances, as previously stated. (*Id*. at 13-15 [attaching pages "9" through "11" of Defs.' Memo. of Law].)

### 2.    Plaintiff's Opposition Memorandum of Law

Generally, in her opposition memorandum of law, Plaintiff asserts six arguments.  (Dkt. No. 112 [Plf.'s Opp'n Memo. of Law].)  First, argues Plaintiff, Defendant Mattice did not have probable cause to arrest her for Obstructing Governmental Administration, because (a) there was no police tape erected when she initially sought the assistance of the firefighters, (b) when she was informed of the police tape she voluntarily walked with the police officers behind the police tape, and (c) she was standing behind the police tape, compliantly answering police officers' questions, at the time of the arrest (albeit in a grief-ridden state).  (*Id*. at 6-7.)

Second, argues Plaintiff, her arrest was retaliatory in nature because (a) she was engaging in protected speech during the time in question (by verbally opposing and challenging police officers' "non-action" of failing to enforce New York animal neglect and cruelty laws), (b) the arrest deterred that speech, and (c) the arrest was motivated by the desire to stop her from "mouthing off with all the cameras right there."  (*Id*. at 7-12.)

Third, argues Plaintiff, the force used by Defendant Mattice was excessive because (a) Plaintiff was petite (barely 130 lbs. in weight, 5'3" in height, and frail), (b) she was non-violent and did not actually re-cross the police tape, (c) she posed no threat of re-crossing the police tape, (d) instead of de-escalating the conflict he escalated it, and (e) he caused her multiple injuries that are more the *de minimis* in nature, most notably, "harm to her psyche," "physical bruising," and pain to her arm and wrist that she still suffers.  (*Id*. at 12-20, 23.)

Fourth, argues Plaintiff, Defendant Mattice cannot "hide behind" the Fire Chief's command to remove Plaintiff from the scene (so that firefighters could do their jobs), because, as an "enforcement officer," Defendant Mattice had a duty to intervene in the fire fighters'

violation of her constitutional rights (by being deliberately indifferent to the destruction of Plaintiff's dogs in violation of the Fourteenth Amendment, and being deliberately indifferent to Plaintiff's mental state at the scene and the city's exclusive custody in violation of an unspecified constitutional amendment). (*Id.* at 20-22.)

Fifth, argues Plaintiff, Defendants may not rely on the videos proffered in support of their motion for summary judgment, because they have not authenticated them under Fed. R. Evid. 901, and the videos are not self-authenticated under Fed. R. Evid. 902. (*Id.* at 23-26.)

Sixth, argues Plaintiff, she is entitled to an adverse inference instruction, because Defendants wilfully failed to preserve certain audio and visual evidence of her arrest that (despite her proper filing of a notice of claim and timely request for the production of that evidence), as evidenced by the "gaps" that occur in, or between, Video 1 and Video 2. (*Id.* at 26-29.)

### 3. Defendants' Reply Memorandum of Law

Generally, in their reply memorandum of law, Defendants assert five arguments. (Dkt. No. 116, Attach. 3 [Defs.' Reply Memo. of Law].) First, argue Defendants, Plaintiff's self-serving assertions (in her memorandum of law, her responsive statement of facts, her affidavit, and the affidavit of her friend Ms. Susan Civic) are insufficient to create a genuine dispute of material fact with regard to the alleged lack of probable cause and extent of her injuries, for the following reasons: (a) Plaintiff's assertion, in her memorandum of law, that she never re-crossed the police tape is not followed by a citation to specific record evidence, and in any event is flatly contradicted by not only Defendant Mattice's affidavit but the (unaltered) video, in which she was repeatedly ordered to "back up" and in which she stated, "I will go behind the line"

(indicating that she had, before that moment, re-crossed the line); and (b) Plaintiff's assertion that she sustained physical and mental injuries is supported only by the affidavit of Ms. Civic (which asserts merely that she noticed "colored bruising" on Plaintiff's wrist, arm and thigh the morning after the incident), her memorandum of law (which asserts, without a verification, that she was "thrown" into the car, in contradiction of Videos 1 and 2, between which there are no gaps, and Plaintiff's contemporaneous medical records, which noted no bruising or physical injuries), and her responsive statement of facts and affidavit (which do not cite to any contemporaneous medical records). (*Id*. at 4-8 [attaching pages "1" through "5" of Defs.' Reply Memo. of Law].)

Second, argue Defendants, Plaintiff's retaliatory-arrest argument fails for the following reasons: (a) as an initial matter, this argument improperly attempts to resuscitate Plaintiff's First Amendment retaliation claim, which was previously dismissed by the Court; (b) in any event, for the purpose of determining whether probable cause existed for an arrest (which is the legal issue to which Plaintiff's retaliatory-arrest argument is relevant), an arresting officer's state of mind or subjective motive for making the arrest is irrelevant. (*Id*. at 8-10 [attaching pages "5" through "7" of Defs.' Reply Memo. of Law].)

Third, argue Defendants, Plaintiff's failure-to-intervene argument (the thrust of which is to challenge Defendant Mattice's probable-cause defense) is an improper attempt to resuscitate her Fourteenth Amendment due process claim, which was previously dismissed by the Court. (*Id*. at 9 [attaching page "6" of Defs.' Reply Memo. of Law].)

Fourth, argue Defendants, Plaintiff's excessive-force argument fails for the following reasons: (a) Plaintiff has not adduced any contemporaneous medical records evidencing her

allegation of sustaining bruising during the arrest, and indeed the contemporaneous medical records note no such bruising or physical injury; and (b) in any event, given Plaintiff's noncompliance during her handcuffing, Defendant Mattice could have lawfully used even more fact than he did in order to effectuate her arrest, under *Brown v. City of New York*, 798 F.3d 94 (2d Cir. 2015). (*Id*. at 10-11 [attaching pages "7" and "8" of Defs.' Reply Memo. of Law].)

Fifth, argue Defendants, the two in-car videos submitted by Defendants were sufficiently authenticated pursuant to Fed. R. Evid. 901 by Robert Brandow, a Retired Sergeant of the City of Schenectady Police Department, who is currently employed as an in-car video technician with the Department and was working in the capacity at the time of the arrest. (*Id*. at 12-13 [attaching pages "9" and "10" of Defs.' Reply Memo. of Law].)

### C. Undisputed Material Facts

Unless otherwise noted, the following facts were asserted and supported by Defendants in their Rule 7.1 Statement and not successfully denied by Plaintiff in a Rule 7.1 Response that both *matched* the paragraphs of Defendants' Rule 7.1 Statement and *specifically cited* the record where the factual issue arises, as required by Local Rule 7.1(c) of the Local Rules of Practice for this Court. (*Compare* Dkt. No. 100, Attach. 11 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 109 [Plf.'s Rule 7.1 Response].)

<u>Claims Against Defendants</u>

1. In her Amended Complaint, Plaintiff asserted thirteen separate causes of action against the City of Schenectady and seven of its employees (for purposes of this Statement, the "City Defendants"), the Village of Scotia and five of its employees (for purposes of this Statement, the "Village Defendants"), and the County of Schenectady and two of its employees (for purposes of this Statement, the "County Defendants").

2.      In its Decision and Order of February 20, 2014, the Court dismissed all causes of action against the City Defendants, the Village Defendants, and the County Defendants, except for the following four claims against the City Defendants: (1) a claim of false arrest, (2) a claim of false imprisonment, (3) a claim of excessive force, and (4) a claim of battery.[1]

3.      More specifically, with regard to Plaintiff's originally asserted causes of action against the City Defendants, the Court dismissed her Third Cause of Action against Defendant Michael DellaRocco for the violation of her First Amendment right to free speech, her Seventh Cause of Action against Defendant DellaRocco for the deprivation of her property without due process of law, her Tenth Cause of Action against Defendant DellaRocco for negligent supervision, and her Eleventh Cause of Action against Defendant DellaRocco for trespass.

4.      In addition, the Court dismissed Plaintiff's Third Cause of Action against Defendant Chief Robert Farstad for the violation of her First Amendment right to free speech, and her Seventh Cause of Action against Defendant Farstad for the deprivation of her property without due process of law.

5.      Finally, the Court dismissed all of Plaintiff's causes of action against the City of Schenectady.

6.      As a result, of Plaintiff's originally asserted causes of action against the City Defendants (i.e., the moving Defendants), Plaintiff's only surviving causes of action are asserted against Defendant Thomas Mattice.

---

[1]      (*Compare* Dkt. No. 100, Attach. 11, at ¶ 2 [Defs.' Rule 7.1 Statement, asserting fact and supporting it with accurate record citations] *with* Dkt. No. 109 [Plf.'s Rule 7.1 Response, failing to deny the fact in a matching numbered paragraph and provide a specific citation to the record where the factual issue arises].)

7. More specifically, in her Fifth Cause of Action, Plaintiff claims that Defendant Mattice violated her civil rights pursuant to 42 U.S.C. § 1983 by using excessive force to restrain and detain her in the police car following her arrest on November 17, 2010.

8. Moreover, in her Sixth Cause of Action, Plaintiff claims that Defendant Mattice violated her civil rights pursuant to 42 U.S.C. § 1983 by falsely arresting and detaining her on November 17, 2010, with no basis in fact or law to do so.

9. Furthermore, in her Eighth Cause of Action, Plaintiff claims that Defendant Mattice violated the New York Tort Liability Act and is liable to her for false imprisonment, because her arrest on November 17, 2010, was without probable cause or justification.

10. Finally, in her Thirteenth Cause of Action, Plaintiff claims that Defendant Mattice improperly assaulted and battered her by restraining her, detaining her and placing her in a police car following her arrest on November 17, 2010.

11. In their Answer to Plaintiff's Amended Complaint, Defendants assert fifteen affirmative defenses.

<u>Plaintiff's Background</u>

12. Plaintiff is a self-employed lawyer who is admitted to practice in the State of New York and in the United States District Court for the Northern District of New York.

<u>Defendant Mattice's Background</u>

13. Defendant Mattice has been employed by the City of Schenectady Police Department since January 1997 in various capacities, including that of patrol officer, sergeant, evidence technician, and detective.

14.     As a police officer, Defendant Mattice has had to use force on occasion, i.e., when attempting to arrest a perpetrator who was resisting arrest; however, Defendant Mattice has never been cited, fined, penalized, demoted or otherwise reprimanded for his conduct as a police officer.

<u>Plaintiff's Pre-Existing Injuries</u>

15.     In April, 2010, Plaintiff was involved in a motor vehicle accident in which her vehicle was struck by that of another driver, causing Plaintiff to lose consciousness.

16.     As a result of the motor vehicle accident, Plaintiff sustained a host of other physical injuries including a concussion, traumatic brain injury, a wrist injury, a burning sensation in her left arm, headaches, and whiplash.

17.     Between the time of the motor vehicle accident in April, 2010, and the incident at issue in November, 2010, Plaintiff had trouble returning to work.[2]

18.     At the time the motor vehicle accident occurred, Plaintiff had only one active case on behalf of a client: a foreclosure action that was resolved by a decision from a court in May of 2010.

---

[2]     (*Compare* Dkt. No. 100, Attach. 11, at ¶ 19 [Defs.' Rule 7.1 Statement, asserting fact and supporting it with accurate record citation] *with* Dkt. No. 109 [Plf.'s Rule 7.1 Response, failing to deny the fact in a matching numbered paragraph and provide a specific citation to the record where the factual issue arises].)  The Court notes that, even if it were to *sua sponte* scour the record for a genuine dispute regarding this fact, it would not find one, due to the record evidence that, following the accident in April 2010, Plaintiff missed six to seven months of work, and then had a "first try [at a] gradual return [to] employment" through a "conference appointment" on November 17, 2014 (the day of the fire).  (Dkt. No. 100, Attach. 7, at 29-34 [attaching pages "27" through "32" of Plf.'s depo. transcript]; Dkt. No. 109, Attach. 1, at ¶ 88 [Plf.'s Affid.]; Dkt. No. 100, Attach. 5, at 11, 20, 22 [Plf.'s Responses to Interrogatory Nos. 7, 19 and 23].)

19.    Plaintiff's attorney, Michael Mackey, represented her in connection with her claim against the vehicle operator in her motor vehicle accident, and negotiated a settlement for the policy amounts.

20.    Plaintiff claims that she was diagnosed with a traumatic brain injury as a result of the accident, and that she received treatment for the injury.

21.    Plaintiff was also treated by Dr. Hamish Kerr, who advised her against practicing law (although not necessarily permanently) because she had short-term memory loss.[3]

22.    She was then referred to Neuropsychology and Sunnyview Rehabilitation for continued treatment for speech, sight, physical coordination, occupational therapy and physical therapy.

23.    Between her motor vehicle accident (in April 2010) and the incident at issue (in November 2010), Plaintiff was approved for Social Security Disability Benefits.

Plaintiff's Arrest on November 17, 2010

24.    At the time of the fire at issue in November 2010, Plaintiff had been residing at a rented apartment in a house located at 1626 Becker Street in Schenectady, New York, with a number of dogs: Osa, Satin, Sheen, Rascal, Spotsza, Geno, Sheena, and Silk.

25.    Plaintiff had been residing at this address for about four years before the fire in November 2010.

---

[3]    (*Compare* Dkt. No. 100, Attach. 11, at ¶ 23 [Defs.' Rule 7.1 Statement, asserting fact and supporting it with accurate record citation] *with* Dkt. No. 109 [Plf.'s Rule 7.1 Response, failing to deny the fact in a matching numbered paragraph and provide a specific citation to the record where the factual issue arises].)  The Court notes that, even if it were to *sua sponte* scour the record for a genuine dispute regarding this fact, it would not find one, given the record evidence corroborating the asserted fact.  (Dkt. No. 100, Attach. 7, at 116-17 [attaching pages "114" and "115" of Plf.'s depo. transcript]; Dkt. No. 109, Attach. 1, at ¶ 88 [Plf.'s Affid.].)

26.     On November 17, 2010, Plaintiff left home at 8:00 a.m. for an MRI scan at St. Clare's Hospital.

27.     After the MRI scan, Plaintiff visited her acupuncturist, Maria Bergan.

28.     Plaintiff left Ms. Bergan's office about an hour later, stopped for groceries, and returned home by bus.

29.     Plaintiff arrived home between 6:00 p.m. and 7:00 p.m. on November 17, 2010.[4]

30.     Plaintiff first became aware of the fire at her apartment when she saw several fire-trucks and a crowd gathered near her building.

31.     Plaintiff ran to the Chief of the Fire Department and said, "My babies, my babies," referring to her dogs, and requested that the firefighters attempt to rescue the dogs.

32.     The Fire Chief informed her that her dogs were all dead; however, Plaintiff continued to demand that the firefighters rescue her dogs.

33.     The Fire Chief then ordered police officers to remove Plaintiff from the scene.

34.     The area had been taped off by the police as a possible crime scene, and Plaintiff was told not to cross the police tape.[5]

---

[4]     (*Compare* Dkt. No. 100, Attach. 11, at ¶ 31 [Defs.' Rule 7.1 Statement, asserting fact and supporting it with accurate record citation] *with* Dkt. No. 109 [Plf.'s Rule 7.1 Response, failing to deny the fact in a matching numbered paragraph and provide a specific citation to the record where the factual issue arises].)  The Court notes that, even if it were to *sua sponte* scour the record for a genuine dispute regarding this fact, it would not find one, given the record evidence corroborating the asserted fact, and lack of admissible record evidence controverting it. (Dkt. No. 100, Attach. 7, at 55-56 [attaching pages "53" and "54" of Plf.'s depo. transcript, indicating it took considerable length of time to reach home]; Dkt. No. 109, Attach. 1 [Plf.'s Affid., failing to even attempt to withdraw her prior deposition testimony on the issue].)

[5]     (*Compare* Dkt. No. 100, Attach. 11, at ¶ 36 [Defs.' Rule 7.1 Statement, asserting fact and supporting it with accurate record citations] *with* Dkt. No. 109 [Plf.'s Rule 7.1 Response, failing to deny the fact in a matching numbered paragraph and provide a specific

35.     Plaintiff was warned that she would be arrested if she failed to remain behind the police tape.

36.     Plaintiff had to be physically taken behind the police tape by Defendant Mattice and a second police officer.[6]

37.     Plaintiff was directed several times to stay behind the police tape.

38.     Plaintiff disregarded Defendant Mattice's order to stay behind the police tape.[7]

39.     Plaintiff was then placed under arrest and charged with obstruction of governmental administration in the second degree under N.Y. Penal Law § 195.05, and resisting arrest under N.Y. Penal Law § 205.30.

40.     Plaintiff claims that Defendant Mattice grabbed and twisted her hands and placed her in handcuffs, causing her pain in her left wrist.

41.     Plaintiff resisted arrest and refused to comply with a directive from Defendant

---

citation to the record where the factual issue arises].)  The Court notes that, even if it were to *sua sponte* scour the record for a genuine dispute regarding this fact, it would not find one, given the record evidence corroborating the asserted fact.  (Dkt. No. 100, Attach. 10, Video 1, at 3:40, 5:00, 5:52, 16:09, 22:55, 23:20, 23:27, 23:47, 24:08, 25:20, 30:26 [Ex. A to Mattice Affid.].)

[6]     (*Compare* Dkt. No. 100, Attach. 11, at ¶ 38 [Defs.' Rule 7.1 Statement, asserting fact and supporting it with accurate record citations] *with* Dkt. No. 109 [Plf.'s Rule 7.1 Response, failing to deny the fact in a matching numbered paragraph and provide a specific citation to the record where the factual issue arises].)

[7]     (*Compare* Dkt. No. 100, Attach. 11, at ¶ 40 [Defs.' Rule 7.1 Statement, asserting fact and supporting it with accurate record citation] *with* Dkt. No. 109 [Plf.'s Rule 7.1 Response, failing to deny the fact in a matching numbered paragraph and provide a specific citation to the record where the factual issue arises].)  The Court notes that, even if it were to *sua sponte* scour the record for a genuine dispute regarding this fact, it would not find one, given the record evidence corroborating the asserted fact.  (Dkt. No. 100, Attach. 10, Video 1, at 27:22, 27:40, 27:49, 28:10, 28:37, 29:23, 28:50, 29:18, 29:22, 29:25, 30:26, 30:42 [Ex. A to Mattice Affid.].)

Mattice to place her hands behind her back (instead holding onto her jacket).[8]

42.      Defendant Mattice took her wrists, brought them behind her back, and handcuffed her.

43.      Following her arrest, Plaintiff claims that she "froze as the result of a combination of fear, shock and an ongoing medical condition" and "could not move."[9]

44.      Patrol Officer Nicholas Giordano and Defendant Mattice escorted Plaintiff from the scene, crossing the police tape that ran across Becker Street, and approaching the patrol vehicle.

45.      Plaintiff claims that Defendant Mattice and another police officer picked her up and threw her into the police car, such that she felt a bobbing sensation and could not "feel" her feet, causing her to "suffer bruising and other injuries and aggravation of preexisting injuries."

46.      Specifically, Plaintiff claims that she sustained bruising to her left thigh, arms, and wrist.

---

[8]      (*Compare* Dkt. No. 100, Attach. 11, at ¶ 43 [Defs.' Rule 7.1 Statement, asserting fact and supporting it with accurate record citation] *with* Dkt. No. 109 [Plf.'s Rule 7.1 Response, failing to deny the fact in a matching numbered paragraph and provide a specific citation to the record where the factual issue arises].)  The Court notes that, even if it were to *sua sponte* scour the record for a genuine dispute regarding this fact, it would not find one, given the record evidence corroborating the asserted fact.  (Dkt. No. 100, Attach. 9, at ¶¶ 21-23 [Mattice Affid.]; Dkt. No. 100, Attach. 10, Video 1, at 29:48, 29:50, 30:00, 30:04, 30:12, 30:15, 30:18, 30:25 [Ex. A to Mattice Affid.].)

[9]      (*Compare* Dkt. No. 100, Attach. 11, at ¶ 45 [Defs.' Rule 7.1 Statement, asserting fact and supporting it with accurate record citations] *with* Dkt. No. 109 [Plf.'s Rule 7.1 Response, failing to deny the fact in a matching numbered paragraph and provide a specific citation to the record where the factual issue arises].)  The Court notes that, even if it were to *sua sponte* scour the record for a genuine dispute regarding this fact, it would not find one, given the record evidence corroborating the asserted fact.  (Dkt. No. 100, Attach. 7, at 72 [attaching page "70" of Plf.'s depo. transcript].)

47.     In addition to the physical injuries, Plaintiff claims that she also sustained humiliation and degradation as she was arrested in the presence of her neighbors.

48.     Defendant Mattice directed Plaintiff to enter the patrol vehicle, and she eventually complied on her own accord, without use of physical force by him.

49.     Plaintiff was then taken to the police station, processed and detained in a cell.

50.     Defendant Mattice did not have any further interactions with Plaintiff after they arrived at the police station.

51.     Plaintiff claims that she squatted on the floor, called out for a phone call, and said that she was not feeling well.

52.     The next thing that Plaintiff recalls is waking up at Ellis Hospital, handcuffed to a hospital bed, with another unidentified police officer standing beside her.

53.     The triage form from the Emergency Department at Ellis Hospital indicates that Plaintiff had suffered from a syncopal episode at the jail upon finding out that her dogs had died.[10]

54.     A physical examination was completed by the attending physician and emergency personnel; however, the medical records noted no bruising to Plaintiff's body and "no obvious injury" to her head (despite the fact that she was reported to have received a "direct blow" to her

---

[10]     (*Compare* Dkt. No. 100, Attach. 11, at ¶ 56 [Defs.' Rule 7.1 Statement, asserting fact and supporting it with accurate record citation] *with* Dkt. No. 109 [Plf.'s Rule 7.1 Response, failing to deny the fact in a matching numbered paragraph and provide a specific citation to the record where the factual issue arises].)  The Court notes that, even if it were to *sua sponte* scour the record for a genuine dispute regarding this fact, it would not find one, given the record evidence corroborating the asserted fact, and the lack of admissible record evidence controverting it.  (Dkt. No. 100, Attach. 7, at 85-86 [attaching pages "83" and "84" of Plf.'s depo. transcript, corroborating fact]; Dkt. No. 109, Attach. 1, at ¶ 156 [Plf.'s Affid., obliquely referencing what occurred at the scene, rather that what occurred *at the jail*].)

head).[11]

55.    A CT scan that was ordered by Plaintiff's attending physician revealed no internal bleeding or any other anomalies.

56.    Plaintiff was diagnosed with "grief reaction" and transferred to the Crisis Unit at Ellis Hospital at the request of her attending physician, where she remained until the following morning.

57.    Plaintiff was released from custody the following morning with an appearance ticket.[12]

**D.    Parties' Briefing of Plaintiff's Motion for Omnibus Relief**

Plaintiff's motion for omnibus requests four forms of relief: (1) that the Court examine the allegedly unfair and unethical behavior of defense counsel in falsely advising the Court, by letter filed on December 21, 2015, that he had *not* received unauthorized medical records regarding Plaintiff, in violation of Fed. R. Civ. P. 11; (2) that the Court prohibit defense counsel from improperly "involv[ing] an entity that is not a party" to this action, specifically, the Law Office of Cia Bruno; (3) that the Court disregard defense counsel's "Supplemental Response to

_____

[11]    (*Compare* Dkt. No. 100, Attach. 11, at ¶ 57 [Defs.' Rule 7.1 Statement, asserting fact and supporting it with accurate record citation] *with* Dkt. No. 109 [Plf.'s Rule 7.1 Response, failing to deny the fact in a matching numbered paragraph and provide a specific citation to the record where the factual issue arises].)  The Court notes that, even if it were to *sua sponte* scour the record for a genuine dispute regarding this fact, it would not find one, given the record evidence corroborating the asserted fact.  (Dkt. No. 102, at 32-35 [attaching pages "31" through "33" of Plf.'s medical records, reporting that a CT scan of her brain was normal].)

[12]    (*Compare* Dkt. No. 100, Attach. 11, at ¶ 60 [Defs.' Rule 7.1 Statement, asserting fact and supporting it with accurate record citation] *with* Dkt. No. 109 [Plf.'s Rule 7.1 Response, failing to deny the fact in a matching numbered paragraph and provide a specific citation to the record where the factual issue arises].)

Plaintiff's Statement of Material Facts," filed on January 22, 2015, in which he improperly evaluated medical opinions and treatment decisions by medical doctors (i.e., Dr. Emily DeSantis, MD, and Dr. Joyce Burton, MD); and (4) that the Court disregard defense counsel's statements contained in Defendants' reply papers, which are self-serving and contradicted by "generally known" de-escalation methods and police techniques. (*See generally* Dkt. No. 128.)

In response, Defendants assert four arguments: (1) Plaintiff's allegation that defense counsel has committed unfair and unethical acts is without merit, because defense counsel has provided Plaintiff with all of the records that he has received, he has not received and retained any unauthorized records, and he has not inappropriately used any such records, which are segregated in his office; (2) Plaintiff's allegation that defense counsel has improperly "involved" the Law Office of Cia Bruno in this action is without merit, because that involvement has consisted only of directing correspondence to her law firm, has not been intended to harass or annoy her, and will cease if she changes her counsel of record in this action; (3) Plaintiff's argument that defense counsel has improperly evaluated medical opinions and treatment decisions by medical doctors is without merit, because Defendants have merely asserted statements and arguments supported by appropriate and correct record citations, which the Court may evaluate in reaching its decision on Defendants' motion for summary judgment; and (4) Plaintiff's argument that defense counsel has made self-serving and unfounded statements in Defendants' reply papers is without merit, because that argument merely constitutes an attempt to have a "last word" on a topic and "make [Plaintiff] an expert" with regard to the events of November 17, 2010. (Dkt. No. 131.)

In an unauthorized reply, Plaintiff asserts arguments about defense counsel's alleged discovery abuses and her address of record on the docket sheet. (Dkt. No. 132.)

## II.     LEGAL STANDARD GOVERNING MOTION FOR SUMMARY JUDGMENT

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). However, when the moving party has met this initial responsibility, the nonmoving party must come forward with specific facts showing a genuine issue of material fact for trial. Fed. R. Civ. P. 56(a),(c),(e).

A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the novmoving party." *Anderson*, 477 U.S. at 248. As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted]. As the Supreme Court has famously explained, "[The nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts" [citations omitted]. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* [citation omitted].

Implied in the above-stated burden-shifting standard is the fact that, where a nonmoving party willfully fails to adequately respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute–even if that nonmoving party is proceeding *pro se*.[13] This is largely because the Court extends special solicitude to the *pro se* litigant largely by ensuring that he or she has received notice of the consequences of failing to properly respond to the motion for summary judgment.[14] As has often been recognized by both the Supreme Court and Second Circuit, even *pro se* litigants must obey a district court's procedural rules.[15] For this reason, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a moving party's statement to have been admitted where the nonmoving party has willfully failed to properly respond to that statement[16]–even where the nonmoving party was proceeding *pro se* in a civil rights case.[17]

---

[13]    *Cusamano v. Sobek*, 604 F. Supp.2d 416, 426 & n.2 (N.D.N.Y. 2009) (Suddaby, J.) (citing cases).

[14]    *Cusamano*, 604 F. Supp.2d at 426 & n.3 (citing cases).

[15]    *Cusamano*, 604 F. Supp.2d at 426-27 & n.4 (citing cases).

[16]    Among other things, Local Rule 7.1(a)(3) requires that the nonmoving party file a response to the moving party's Statement of Material Facts, which admits or denies each of the moving party's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises. N.D.N.Y. L. R. 7.1(a)(3).

[17]    *Cusamano*, 604 F. Supp.2d at 427 & n.6 (citing cases).

### III.    ANALYSIS

#### A.    Plaintiff's Motion for Omnibus Relief

Before analyzing Defendants' motion for summary judgment, it is appropriate to analyze Plaintiff's motion for omnibus relief, because the third and fourth forms of relief sought in that motion seek to preclude the Court's consideration of evidence and/or arguments submitted by Defendants in support of their motion for summary judgment. *See, supra,* Part I.D. of this Decision and Order. (*See also* Dkt. No. 128, at 7, 8 ["By hoping to obtain a summary judgment in the absence of necessary medical records, in the actual possession of the Defendant's and unfairness to the Plaintiff in examining the original recordings, their obscurity; and refusing to produce other recordings where cameras were present, are all inequitable attempt to obtain an unfair judgment against an injured Plaintiff. . . . [T]he Plaintiff submits that the manner in which this summary judgement was filed, the evidence knowingly omitted, and obstructed by the Defendants with their counsel in tandem, is not one that is worthy of a summary judgement."]).

After carefully considering the matter, the Court finds that Plaintiff's motion should be denied for each of the reasons stated in Defendants' response. *See, supra,* Part I.D. of this Decision and Order. To those reasons, the Court adds four points.

First, Plaintiff's reply on her omnibus motion is unauthorized, because her motion is non-dispositive in nature, and no prior leave to file a reply was granted (or even requested). N.D.N.Y. L.R. 7.1(b)(2).

Second, Plaintiff's omnibus motion is denied as unsupported by a memorandum of law, in violation of Local Rule 7.1(a)(1). (Dkt. No. 128 [consisting of a letter and declaration, which may not include "legal arguments" under Local Rule 7.1(a)(2)].)

Third, in the alternative, to the extent that Plaintiff's omnibus motion requests the second, third and fourth forms of relief stated therein, that motion is denied because it fails to sufficiently state the relief sought and state with particularity the grounds for that relief, in violation of Fed. R. Civ. P. 7(b)(1)(B),(C).

Fourth, to the extent Plaintiff's omnibus motion requests the third and fourth forms of relief stated therein (which effectively seek to oppose Defendants' supplemental reply on their motion for summary judgment), Plaintiff's omnibus motion is denied as constituting an unauthorized sur-reply to Defendants' motion for summary judgment, which she was not granted leave to file, in violation of N.D.N.Y. L.R. 7.1(b)(1). (*See* Text Order filed Dec. 21, 2015 [merely granting Defendants leave to reply to Plaintiff's supplemental submission].)

The Court notes that, to the extent that Plaintiff's omnibus motion requests the third form of relief stated therein (i.e., an Order disregarding Defendants' "Supplemental Response to Plaintiff's Statement of Material Facts," filed on January 22, 2015), that request is not necessary: Defendants' "Supplemental Response to Plaintiff's Statement of Material Facts" has little if any legal effect. This is because Plaintiff never filed a document with the legal effect of a "Statement of Material Facts." (Dkt. No. 109.) Under Local Rule 7.1(a)(3), a "Statement of Material Facts" is filed only by a party moving for summary judgment; and Plaintiff never moved (or cross-moved) for summary judgment. Rather, Plaintiff opposed Defendants' motion for summary judgment. As a result, her submission of December 7, 2015, was liberally construed as an attempted response to Defendants' Statement of Material Facts. No reply to such a response is either permitted by Local Rule 7.1(a)(3) or even necessary (given the

pointlessness of disputing an attempt to deny a fact).[18]  Moreover, to the extent Defendants

construed Plaintiff's submission of December 7, 2015, as a statement of "additional material

facts" pursuant to Local Rule 7.1(a)(3), such a statement must be of "additional material facts

that the non-movant contends are *in dispute*."  N.D.N.Y. L.R. 7.1(a)(3) (emphasis added).  As a

result, again, no response to such a statement is either permitted by Local Rule 7.1(a)(3) or even

necessary.[19]

      For all of these reasons, the Court denies Plaintiff's motion for omnibus relief.

## B.      Defendants' Motion for Summary Judgment

      After carefully considering the matter, the Court finds that Defendants' motion should be

granted for each of the reasons stated above in Parts I.B.1. and I.B.3. of this Decision and Order.

To those reasons, the Court adds five points.

      First, the Court finds that Plaintiff's failure to deny the properly supported factual

assertions contained in Defendants' Rule 7.1 Statement in matching numbered paragraphs

supported by an accurate citation to admissible record evidence in a Rule 7.1 Response was

*willful* under Fed. R. Evid. 83(a)(2) for each of two reasons: (1) she is an attorney who is

---

[18]      Rather, it is only if a court's local rules permit an additional statement asserting *undisputed* facts that a response would be warranted.  *See, e.g.,* D. R.I. 56(a)(4) ("If an objecting party files a separate statement of additional undisputed facts and the movant contests any of those facts, the movant shall file a separate statement setting forth what additional facts are disputed, numbered correspondingly to the opposing party's additional undisputed facts, at the same time it files its reply memorandum pursuant to LR Cv 7(b)(2).").

[19]      The Court notes that, when it gave Defendants an opportunity to supplement their reply papers (in order to address the medical record submitted by Plaintiff in supplementation of her opposition papers), the Court never gave Defendants leave to supplement their original response to Plaintiff's original "Statement of Material Facts," but merely leave to "reply to plaintiff's submission."  (Text Order filed Dec. 21, 2015.)

admitted to practice in this Court and thus has certified that she both has read and understands

the Court's Local Rules of Practice, including Local Rule 7.1; and (2) in any event, on February

15, 2012, she received a courtesy copy of both the Court's Local Rules of Practice and *Pro Se*

Handbook, page 42 of which reminded her of the contents of Local Rule 7.1 (Dkt. No. 3, at 2).[20]

Under the circumstances (which include the congestion on its docket), the Court declines to

conduct a *sua sponte* review of the 620 pages of record evidence in this case (Dkt. No. 100,

Attach. 2-10; Dkt. No. 102; Dkt. No. 109, Attach. 1-9; Dkt. No. 112, Attach. 1-3; Dkt. No. 122,

Attach. 1) for a genuine dispute of material fact controverting the properly supported factual

assertions in Defendants' Rule 7.1 Statement.

    Second, with regard to Plaintiff's false arrest claim, her argument that she had not

actually crossed the police tape and was not attempting to re-cross the police tape at the moment

of her arrest is unavailing: her *prior* actions of initially crossing the police tape when it was

clearly visible and then *attempting* to re-cross the police tape (whether or not she succeeded in

doing so) created, under the circumstances, probable cause to arrest her for Obstructing

Governmental Administration, which probable cause did not dissipate merely through the

passing of a few minutes. *See Rodriguez v. Bubnis*, 11-CV-1436, 2014 WL 6078529, at *9

(N.D.N.Y. Nov. 13, 2014) (Suddaby, J.) (finding that plaintiff's subsequent attempt to disburse,

even if true, would not have "dissipated" the probable cause to arrest him for disorderly conduct

under the third subsection of N.Y. Penal Law § 240.20, and that, in any event, at the very least,

probable cause arguably did not dissipate under the circumstances, thus protecting the officers

---

[20]    The Court notes that it finds no "gaps" in, or between, Video 1 and Video 2.
(Dkt. No. 100, Attach. 10, Video 1 [Ex. A to Mattice Affid.].)

from liability as a matter of law by the doctrine of qualified immunity); *cf. Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir.1997) ("Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest.").

Third, Plaintiff cannot shield herself from a lawful arrest for her prior actions by arguing that the arrest was more-immediately preceded by her opposition or challenge to police conduct, rendering her arrest retaliatory in nature. As an initial matter, contrary to her argument, no admissible record evidence exists that Plaintiff was verbally opposing and challenging police officers' "non-action" of failing to enforce New York animal neglect and cruelty laws. Rather, the "opposition" or "challenge" to which Plaintiff refers consists of her statements to Defendant Mattice that he was was "being unreasonable" for not complying with her loud and repeated commands to "get the Commissioner for me!" (Dkt. No. 100, Attach. 10, Video 1, at 29:18-29:50 [Ex. A to Mattice Affid.].) Even if those statements could be construed as protected speech, they were accompanied by Plaintiff's continued disregard of police officers' directives to state her name, calm down, and back away from the line (destroying the causal connection necessary to render her arrest retaliatory in nature).[21] Finally, and more important, as Defendants argue, Defendant Mattice's subjective intention at the time of the arrest is immaterial to whether or not probable cause existed for the arrest.

---

[21] Plaintiff places much reliance on a statement in the video: "I didn't want her mouthing off with all the cameras right there." Setting aside the fact that it is not entirely clear which officer made this statement, it is clear that, based on a careful review of the statement's context, *at most*, the statement regards merely why Defendant Mattice chose that particular location for the arrest, i.e., on the side of the police line away from the house rather than the side of the police line near the house, which was in front of the cameras (and would have both obstructed the cameras' view and created a disorderly spectacle for them). (Dkt. No. 100, Attach. 10, Video 1, at 31:47-32:21 [Ex. A to Mattice Affid.].)

Fourth, also with regard to Plaintiff's false arrest claim, the Court rejects her argument that the fire was extinguished by the time she (1) crossed the police tape and/or (2) attempted to re-cross the police tape (in contravention of Defendant Mattice's directive). However, she provides no specific or accurate cite to any admissible record evidence in support of that argument. (Dkt. No. 112, at 8, 21-22 [Plf.'s Opp'n Memo. of Law].) Video 1 certainly does not support it. (Dkt. No. 100, Attach. 10, Video 1 [Ex. A to Mattice Affid.].) In any event, it is uncontroverted that Defendant Mattice had been ordered by the Fire Chief to remove Plaintiff from the scene. *See, supra,* Fact No. 33 in Part I.C. of this Decision and Order. Moreover, it is clear from the record that grounds existed for him to reasonably believe that the scene was a crime scene (due to the suspicion of arson), and that Plaintiff would endanger herself by going into the burning or charred house (as a non-firefighter). (Dkt. No. 100, Attach. 10, Video 1, at 23:30-23:35, 23:48-24:05, 25:55-26:02, 28:08 [Ex. A to Mattice Affid.].)

Under the circumstances, probable cause existed to believe that Plaintiff's repeated and deliberate disregard of Defendant Mattice's order to stay behind the police tape, which was exacerbated by her disruptive harangue, interfered with his performance of his duty to the Fire Chief. *See* N.Y. Penal Law § 195.05 ("A person is guilty of obstructing governmental administration when he [or she] intentionally . . . prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference."); *cf. Greene v. David*, 41 F. Supp.2d 167, 169 (N.D.N.Y. 1999) (Kahn, J.) (finding that probable cause exists to arrest homeowner for Obstructing Firefighting Operations in violation of N.Y. Penal Law § 195.15, when he interfered in firefighters' efforts to put out fire in homeowner's residence), *aff'd*, 199 F.3d 1322 (2d Cir. 1999).

Fifth, and finally, with regard to Plaintiff's excessive force claim, the closest factual issue presented is whether she was physically dragged, carried or "manhandled" as Defendant Mattice and another officer (presumably Patrol Officer Giordano) escorted her from the scene to the patrol vehicle.[22]  However, based on the video, it is undisputed that, for the first part of that trip (i.e., from the outside of the house to the police tape), Plaintiff was not physically dragged, carried or manhandled.  (Dkt. No. 100, Attach. 10, Video 1, at 25:15-25:27 [Ex. A to Mattice Affid.].)  It is conceivable that, during the second part of the trip (i.e., from her arrest at the police tape to her arrival at the patrol car), which lasted less than half of a minute (and was not shown in the video), a certain degree of physical force may have been used due to her resistance. (*Id*. at 29:49-31:24; Dkt. No. 100, Attach. 10, Video 2, at 00:32-00:50 [Ex. A to Mattice Affid.].) The question is whether it rose to the level of a Fourth Amendment violation.

Of course, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal quotation marks omitted).  Moreover, *"de minimis* injury can serve as conclusive evidence that *de minimis* force was used." *Washpon v. Parr*, 561 F. Supp.2d 394, 407 (S.D.N.Y. 2008) (internal quotation marks omitted).  However, the Second Circuit has permitted a plaintiff's excessive-force claim to survive a motion for summary judgment where there was evidence that, during the course of the arrest, a police officer "pushed" the plaintiff against the

---

[22]      (*Compare* Dkt. No. 100, Attach. 9, at ¶ 25, 28 [Mattice Affid.] *with* Dkt. No. 100, Attach. 5, at 8, 16 [Plf.'s Responses to Interrogatory Nos. 2.b. and 14, asserting that she was "tightly raised . . . up by each upper arm while cuffed[,] dragged and physically thrown into the police car, where [her] body landed . . . towards the side of the vehicle," and that her "body was slammed into the police car"].)  The Court notes that, while it has no duty to *sua sponte* scour the record for a genuine dispute of material fact, it will not turn a blind eye to such a dispute, should it come across one during its review of the record to determine if the movant has met its modest threshold burden.

inside of the door of her car, "yanked" her out, "threw [her] up against the fender," and "twisted [her] arm behind [her] back." *Robison v. Via*, 821 F.2d 913, 924-25 (2d Cir. 1987).

Here, while there is admissible record evidence that Defendant Mattice and the second officer "dragged" Plaintiff toward the car (through raising her off the ground by her upper arms), there is no admissible evidence of any "pushing," "yanking" or "arm twisting." (Dkt. No. 100, Attach. 5, at 8, 16 [Plf.'s Responses to Interrogatory Nos. 2.b. and 14, asserting that she was "tightly raised . . . up by each upper arm while cuffed[,] dragged and physically thrown into the police car, where [her] body landed . . . towards the side of the vehicle," and that her "body was slammed into the police car"].) Moreover, to the extent that Plaintiff's sworn statement that she was "thrown into the police car" or "slammed into the police car" is interpreted to mean that she was thrown or slammed *against* the police car, that statement is contradicted by the images and sound on Video 2, the sound on Video 1, the testimony of Defendant Mattice, and Plaintiff's medical records. (Dkt. No. 100, Attach. 10, Video 1, at 29:49-31:24 [Ex. A to Mattice Affid.]; Dkt. No. 100, Attach. 10, Video 2, at 00:32-00:50 [Ex. A to Mattice Affid.]; Dkt. No. 100, Attach. 9, at ¶ 25, 28 [Mattice Affid.]; *see also, supra,* Statement of Fact No. 54 in Part I.C. of this Decision and Order.) Rather, Plaintiff's sworn statement is more reasonably interpreted to mean that she was thrown *inside* the police car; however, that statement is also contracted by the record. (*Id*.) Finally, as for Plaintiff's remaining statement that she was "slammed" inside the police car, setting aside the nonsensical nature of that statement, based on the record, the only thing that "slammed" was the car door behind Plaintiff once she was sitting inside the car.

What the Court is left with is evidence Defendant Mattice and the second officer raised Plaintiff off the ground by her upper arms and "dragged" her toward the car, and/or may have

caused her to impact the police car with less force than necessary to either make a sound or result in injuries worth noting in medical records. While such conduct might be characterized by some as uncompassionate under the circumstances, it does not rise to the level of a violation of the Fourth Amendment or New York State common law.

For all of these reasons, the Court grants Defendants' motion for summary judgment.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for omnibus relief (Dkt. No. 128) is **<u>DENIED</u>**; and it is further

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 100) is **<u>GRANTED</u>**; and it is further

**ORDERED** that the remainder of Plaintiff's Amended Complaint (Dkt. No. 8) is **<u>DISMISSED</u> with prejudice**; and it is further

**ORDERED** that the Clerk of the Court shall issue a Judgment for Defendants and close this action.

Dated: March 14, 2016
       Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge